HUGH GARDNER et al., Plaintiffs in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

The removal of an inspector of election under section 13 of the act of 1872, (chap. 675, Laws of 1872), relating to elections in the city of New York, without a previous written notice, as required by said section, can only lawfully be made when he is "actually on duty on a day of registration, revision of registration or election," and only then "for improper conduct as an election officer;" at any other time save on a day specified, a notice is indispensable.

The language of said section necessarily implies a prohibition against a removal without notice save in the excepted cases, and a violation thereof is a misdemeanor under the section of the Revised Statutes (2 R. S., 696, § 39) providing that the performance of an act prohibited by a statute where no penalty therefor is imposed, "shall be deemed a misdemeanor."

Where the act thus prohibited is intentionally done, it is a misdemeanor irrespective of the motive or intent. It is no defence, therefore, upon the trial of an indictment therefor, that the accused acted in good faith and under legal advice that they had a right to remove without notice. A mistake of law does not excuse the doing of a prohibited act.

The provision of the act of 1855 (§ 5, chap. 337, Laws of 1855), declaring that the Court of Special Sessions shall have power to hear and determine all *complaints* for misdemeanors and shall possess "exclusive jurisdiction" thereof unless it order the complaint into, or the accused elects to be tried in the Court of General Sessions, does not take away from the Court of Oyer and Terminer jurisdiction to try an indictment for a misdemeanor; it is simply complaints (*i. e.*, preliminary charges, such as are made before committing magistrates) which the Special Sessions have exclusive jurisdiction to hear.

(Argued February 1, 1875; decided June 15, 1875.)

ERROR to the General Term of the Supreme Court in the first judicial department to review judgment affirming a judgment of the Court of Oyer and Terminer of the city and county of New York, entered upon a verdict convicting plaintiffs in error of a misdemeanor. (Reported below, 2 Hun, 222; 5 T. & C., 678.)

The indictment charged and the evidence showed, that plaintiffs in error, who were commissioners of police and members of the board of police of the police department of

the city of New York, on the 3d day of November, 1873, unlawfully removed one John Sheridan, an inspector of election, from his office when he was not actually on duty on a day of registration, revision of registration or election, without first giving him notice in writing, setting forth the reasons for such removal as required by the act of chapter 675, Laws of 1872 (§ 13).

Upon the trial the accused offered to prove that Sheridan had been guilty of improper conduct as an election officer, and on the day of his removal threatened that he would stuff ballot-boxes, which facts were communicated by way of affidavits to the commissioners before removal, and that they believing the charges acted under them in good faith, and under belief and legal advice that the cause of removal brought the case under one of the statutory exceptions excusing notice. This evidence was excluded as irrelevant and immaterial; the court holding that it made no difference except as a guide to punishment, whether the accused willfully or innocently, in bad faith or in good faith, did the act complained of; to which ruling the counsel of the accused duly excepted.

The indictment was found in the Court of General Sessions without a previous complaint having been made before a magistrate. The indictment was sent to the Oyer and Terminer without the consent of the defendants.

*A. Oakey Hall* for the plaintiffs in error. The court erred in ruling and charging that the jury were not to consider the intent or motive of plaintiffs in error in removing Sheridan, and that there was conclusive presumption of law that they did it willfully. (1 Bish. Cr. L., §§ 132–227, 235; 3 Greenl. Ev., § 13; *State of Nevada* v. *Gardner*, 5 Nev., 378; *People* v. *Harris*, 29 Cal., 681; 1 East, 563; *Fiedler* v. *Darrin*, 50 N. Y., 443.) The judgment should be arrested because the court was without jurisdiction to try the offense alleged in the indictment. (Laws 1855, chap. 337, § 5; *People* v. *Toynbee*, 13 N. Y., 378; *People* v. *Rawson*, 61 Barb., 628.)

*Charles S. Fairchild* for the defendants in error. The court was correct in refusing to admit evidence of plaintiffs' intent in the removal. (*People* v. *Brooks*, 1 Den., 457 ; *People* v. *Bogart*, 3 Park., 143 ; *People* v. *Morris*, 3 Den., 381, 403 ; *People* v. *Jones*, 54 Barb., 318 ; *Clark* v. *Miller*, 47 id., 41 ; *Rex* v. *Fairsbury*, 4 T. R., 451 ; *Rex* v. *Stukely*, 12 Mod., 493 ; *Reg.* v. *Hicklin*, 3 Q. B. [L. R.], 368 ; *Steele* v. *Brannan*, 7 C. P. [L. R.], 267.)

CHURCH, Ch. J. The first question that naturally arises is, whether the statute was violated in not giving notice to inspector Sheridan before removing him. The statue is as follows :

" The inspectors of election appointed under the provisions of this act shall hold office for one year unless sooner removed for want of the requisite qualifications or for cause, in either of which case such removal, unless made while the inspector is actually on duty on a day of registration, revision of registration or election, and for improper conduct as an election officer, shall only be made after notice in writing to the officer sought to be removed, which notice shall set forth clearly and distinctly the reasons for his removal." (Laws of 1872, chap. 675, § 13.)

Sheridan was removed without notice, and not on a day of registration, revision of registration or election, but it is claimed that he was removed for improper conduct as an election officer, and that no notice was necessary. The statute requires notice to be given as a rule ; the exception relates to a particular time, and a particular cause. Both must exist to justify removal without notice. The time must be on a day of registration, revision of registration or election, and the cause must be improper conduct as an election officer, and in addition the incumbent must be on duty. Unless these facts all exist, notice is indispensable to a removal. The construction contended for would authorize a removal on the specified days for any cause, and on any other day for improper conduct as an election officer, without notice. This

would make the exception broader than the rule. If the word "and" had been "or" there would have been much more force in the position. Then it might be claimed that the power of removal on the specified days was unrestricted, and might therefore be exercised for any cause, and that the additional clause furnished another exception, but as it reads, the words "and for improper conduct as an election officer," are words of limitation, operating to restrict the preceding general language. A slight transposition of the statute will render its meaning more manifest. "The inspectors of election * * * shall hold office for one year, unless sooner removed for the want of the requisite qualifications, or for cause, in either of which cases such removal shall only be made after notice in writing to the officer sought to be removed * * * unless made while the inspector is actually on duty on a day of registration, revision of registration, or election, and for improper conduct as an election officer."

It is difficult to place any other construction upon the language than that indicated by this rendering, which requires the concurrence of time and particular offence to warrant a removal without notice, and such was doubtless the intention. The exception was evidently designed to protect the purity of the ballot box and the rights of the voters, in an emergency which required prompt action. If the incumbent, while engaged in registering, was found inserting fictitious names, or neglecting the requirements of law, or on election day in stuffing the boxes, or other improper conduct, it was intended that the power of removal might be instantly exercised as a necessity to prevent the continuance of fraud, while no such necessity would exist upon a day when the incumbent was off duty, or for not being "able to read, write and speak the English language understandingly," or the want of some other qualification. It was to arrest the fraud while being committed, by a prompt removal and a new appointment, that the exception was intended to provide for. Besides the term of one year would be utterly valueless upon the construction contended for. Practically the inspectors

would hold merely during the pleasure of the police commissioners, while the legislature evidently designed to give them a fixed term of office to be terminated only in the manner referred to. The trial proceeded and the conviction was had under a general provision of the Revised Statutes, as follows: "When the performance of an act is prohibited by any statute, and no penalty for the violation of such statute is imposed, either in the same section containing such prohibition or in any other section or statute, the doing such act shall be deemed a misdemeanor." (2 R. S., 719 [Edm. ed.], § 39.) The point was presented, whether the statute first quoted contained such a prohibition as constituted a misdemeanor under the section. The prohibition is not in express terms, but I am inclined to think that it is necessarily implied. The provision that removals shall only be made with notice, may be regarded as equivalent to a mandate that they shall not be made without. What is necessarily implied in a statute, is expressed. So it is sufficient that the act is forbidden, unless certain other acts are first done, or certain facts exist, if it appear that the other acts were not done, or the facts did not exist. The plaintiffs in error were prohibited from removing an inspector except on notice. A removal, therefore, without notice, is as much a violation of the statute, as if no removal was permitted. (3 Par. C. R., 143.)

It was uncontroverted on the trial, that the inspector was not removed on a day of registration, revision of registration, or election, nor but that he was removed without notice, but the defendants offered to prove, in substance, that they had been informed, by affidavit and otherwise, that Sheridan had been guilty of improper conduct as an election officer, and had, on the day of his removal, threatened that he would stuff the ballot-boxes the next day whenever opportunity occurred; that they believed the charges made were true, and that they acted in good faith and under legal advice that they had a right to remove for such a cause without giving notice. In short, the defence was an honest misconstruction of the law under legal advice. The court ruled out

the evidence offered, and held that intentionally doing the act prohibited constituted the offence. It is quite clear that the facts offered to be shown, if true, would relieve the defendants from the imputation of a corrupt intent, and, indeed, from any intent to violate the statute. The defendants made a mistake of law. Such mistakes do not excuse the commission of prohibited acts. " The rule on the subject appears to be, that in acts *mala in se*, the intent governs, but in those *mala prohibita*, the only inquiry is, has the law been violated?" (3 Den., 403.) The act prohibited must be intentionally done. A mistake as to the fact of doing the act will excuse the party, but if the act is intentionally done, the statute declares it a misdemeanor, irrespective of the motive or intent. The distinction between a mstake of law and fact is illustrated in 1 Bishop on Crim. Law (§§ 374 to 377). In *The People* v. *Brooks* (1 Den., 457), the defendant was indicted for a willful neglect of official duty, in refusing to take an affidavit, and it was held that it was no defence that the officer believed that he was not bound to do the act, and was not guilty of bad faith in refusing. It was also held that " willful " in the statute meant simply inten tional, and that was a much stronger case than this. There is authority for holding that the word " willfully " may mean corruptly or maliciously. (1 Bish. on Crim. Law, § 421.) In this statute the word is not employed, and hence there is no necessity of defining it. The authorities seem to establish that to sustain an indictment for doing a prohibited act, it is sufficient to prove that the act was knowingly and intentionally done. (See cases before cited; 54 Barb., 318; 4 T. R., 451.) The evidence offered did not tend to show the contrary, but only that the defendants were of opinion that the statute did not require notice to be given before removal. This opinion, if entertained in good faith, mitigated the character of the act, but was not a defence.

The learned counsel for the plaintiffs in error submitted an able and eloquent argument against a conviction for crime when the intent to violate the law is wanting; but, while agreeing

with his general views on the subject of the ingredients necessary to establish crime, we think that the terms of the statute, and the distinction between mistakes of law and fact, render these views inapplicable to the present case. In the cases ingeniously put by the counsel, a defence would be established because the acts would not be intentionally or designedly done. In this case, if the defendants could have shown that they believed that in fact notice had been given to the inspector, although it had not, they would not have been guilty of the offence, because the intention to do the act would have been wanting. Their plea is : True, we intended to remove the inspector without notice, but we thought the law permitted it. This was a mistake of law, and is not strictly a defence. The case cited from 5th Nevada, 378, tends to support the views of the plaintiff in error, but it is evident that a majority of the court struggled to relieve the defendant from a harsh punishment for a comparatively innocent act. The remarks in the note of a case in 1st East, 563, simply define the distinction between a liability for a judicial and a ministerial act. The doctrine applicable to a case arising under the statute in question is too well settled in this State to justify the court in disturbing it, and, besides, we think it is right. If the offence is merely technical, the punishment can be made correspondingly nominal ; while a rule requiring proof of a criminal intent to violate the statute, independent of an intent to do the act which the statute declares shall constitute the offence, would, in many cases, prevent the restraining influence which the statute was designed to secure.

A doubt has been suggested whether the general statute referred to is applicable for the reason that other statutes, viz., for a willful neglect of official duty and for corrupt conduct as an election officer under the general statutes, were intended to embrace all cases of misconduct of the character charged ; but this point was not urged upon the trial nor in this court, and it is unnecessary to consider it.

It is claimed that the Court of Oyer and Terminer had no

jurisdiction to try the indictment, and this is predicated upon section 5 of chapter 337 of the Laws of 1855, which declares that the Court of Special Sessions shall have power to hear, determine and punish, according to law, all complaints for misdemeanors, and shall possess "exclusive jurisdiction thereof" unless said court orders the complaint into the General Sessions, or unless the accused, when arrested, shall elect to be tried in the Court of General Sessions. We do not think this statute was designed to take away the jurisdiction of the General Sessions which is declared, in the first section of the same act, to be "to hear, determine and punish, according to law, all crimes and misdemeanors whatsoever." The counsel for the plaintiff in error argues that the words "according to law" limits the jurisdiction to cases ordered into the court under the fifth section. These words relate not to jurisdiction or power, but to the manner of exercising it. It cannot be supposed that the legislature in one section of a statute conferred power upon the General Sessions to hear all misdemeanors and in another section gave the Special Sessions exclusive power to hear all of them, except such as the latter court might send to the former. Such incongruous provisions would not be likely to be found in the same statute. We should expect the use of quite different terms, but the language of the two sections is materially unlike. The General Sessions may hear, etc., all *misdemeanors,* the Special Sessions have exclusive power to hear all *complaints for misdemeanors.* *Complaints* are preliminary charges before committing magistrates; and it is such complaints, when properly before them, that the Special Sessions have exclusive jurisdiction to hear. If the party brought before a committing magistrate elect to have his case heard by the General Sessions, it must go there, and the Special Sessions itself may send cases to the General Sessions. All other complaints they have exclusive jurisdiction to try, that is, all other complaints before them. At the time this act was passed there were cases where an appeal was allowed, after conviction, from the Special to the General Sessions, and upon such

appeal the conviction was void. (2 R. S. [Edm. ed.], 740, § 27.) The word exclusive may have been used to meet that provision; but whether so or not there is nothing in the statute showing an intention to deprive the General Sessions, much less the Oyer and Terminer, from hearing and determining misdemeanors by indictment and trial in the usual way. Jurisdiction is never deemed taken away by implication; and if the word exclusive is capable of any other interpretation it must be given, and that it is so is manifest.

The judgment must be affirmed.

All concur.

Judgment affirmed.