DETERMINED IN THE

# FIRST DEPARTMENT,

AT

# GENERAL TERM,

## June, 1880.

---

EDWARD COWLEY, PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

1876, *ch. 122, § 4—one failing to supply a child in his custody with proper food guilty of an offense under—photographs—when admitted in evidence.*

To constitute an offense under section 4 of chapter 122 of 1876,—providing that " whoever, having the care or custody of any child, shall willfully cause or permit the life of such child to be endangered, or the health of such child to be injured, or who shall willfully cause or permit such child to be placed in such a situation that its life may be endangered, or its health shall be likely to be injured, shall be guilty of a misdemeanor,"—it is not necessary that the accused should have committed any affirmative act, but it is sufficient if one, having the care and custody of a child, willfully omit to give it proper and wholesome food, and willfully neglect to provide for and give to it, when sick, proper medicine and medical attendance, and by reason of such omissions and neglect the life of the child is endangered or its health injured.

When in such a case the injury to the health of the child is occasioned by such omissions and neglect on the part of the accused, continued and extended over a long period of time, it is proper to charge in the indictment that the offense was committed upon a particular day subsequent to the time when the consequences of the neglect were developed.

Upon the trial of one indicted for a violation of the said statute, in failing to provide a child in his custody with suitable food and medicine, photo-

graphs of the child taken soon after its removal from the custody of the accused to a hospital, the accuracy of which are established by the testimony of witnesses, are admissible to give an accurate representation of its physique at or about the time of its removal.

WRIT OF ERROR to the Court of General Sessions for the city and county of New York.

The plaintiff in error was indicted and convicted at the Court of General Sessions, for a violation of the fourth section of chapter 122 of the Laws of 1876, entitled " An Act to prevent and punish wrongs to children." The evidence on the part of the prosecution established, that the child was received into the Shepherd's Fold, an institution for the care of children under the management of the defendant, in January, 1878, being then in good health and condition ; that on December 26, 1879, the child was taken by the wife of the prisoner to St. Luke's Hospital, in an emaciated condition, such condition being caused, according to the testimony of the physicians who examined it, by starvation. Further evidence was given tending to show that the child had been fed with improper and insufficient food, that it received no proper care of any kind, and no sufficient medical treatment when ill. The testimony on the part of the defense was directed to show that the child was properly cared for, and that its emaciated condition was the result of disease, for which the prisoner was not responsible.

*C. W. Brooke* and *Clark Bell*, for the plaintiff in error.

*B. K. Phelps*, for the defendant in error.

BRADY, J. :

The plaintiff in error was indicted in the Court of General Sessions for a violation of section 4 of chapter 122 of the Laws of 1876, entitled " An Act to prevent and punish wrongs to children." The language of the section is as follows :

" Whoever, having the care or custody of any child, shall willfully cause or permit the life of such child to be endangered, or the health of such child to be injured, or who shall willfully cause or permit such child to be placed in such a situation that its life may

be endangered, or its health shall be likely to be injured, shall be guilty of a misdemeanor."

The indictment contained five counts, but the first and second counts only were resorted to, and these contained the necessary charges to bring the accusation within the section referred to, and are as follows:

"First count. That Edward Cowley, late of the Nineteenth Ward of the city of New York, in the county of New York aforesaid, being an evilly-minded and cruelly-disposed person, and well knowing and intending the premises hereinafter set forth, unlawfully, willfully and wickedly, on the twenty-sixth day of December, in the year of our Lord one thousand eight hundred and seventy-nine, at the ward, city and county aforesaid, did neglect to provide a certain child, then and there known by the name of Louis Kulkusky, otherwise called Louis Victor, and of which child he then and there had the care and custody, and which said child was then and there in his custody, and was an infant of tender age, to wit, of the age of five years, with, and to give and administer unto the said child, proper, wholesome and sufficient food, meat, drink, warmth, clothing, bed-covering and means of cleanliness, and did therein and thereby willfully cause and permit the health of said child to be injured, against the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity.

"Second count. And the jurors aforesaid upon their oath aforesaid do further present: That afterwards, to wit, on the day and in the year aforesaid, at the ward, city and county aforesaid, the said Edward Cowley unlawfully, willfully and wickedly, a certain child then and there known by the name of Louis Kulkuski, otherwise called Louis Victor, and of which child he then and there had the care and custody, and which said child was then and there in his custody, and was an infant of tender age, to wit, of the age of five years, and which said child theretofore had been and then was diseased, sick and ailing in its body and limbs, and then and there required proper medicine and medical attendance, did willfully neglect to provide with, and to give and administer unto said child due, proper and sufficient medicine and medical attendance and care, when

so as aforesaid diseased, sick and ailing, and did therein and thereby willfully cause and permit the health of said child, to wit, the infant aforesaid, to be injured, against the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity."

Upon the trial numerous exceptions were taken, both to the admission and exclusion of evidence and to the rulings of the recorder who presided, upon motions made and requests to charge. The prominent objections to the indictment, as they are understood, are that under the statute it was necessary to charge the commission of an affirmative act by which the offense was demonstrated, and that it charged the commission of the offense on a particular day, when, in point of fact, if committed, it was the result of a series of acts continuing, and together resulting in the offense. The first of these objections is utterly untenable, upon any fair construction of the statute, or the object which it was designed to accomplish. Its language, as we have already seen, is that whoever having the care or custody of any child shall willfully cause or permit the life of such child to be endangered or the health of such child to be injured, or who shall willfully cause or permit such child to be placed in such a situation that its life may be endangered or its health be likely to be injured shall be guilty of a misdemeanor. The exposure may necessarily result from a continuing cause, day after day, the aggregate results of which create the danger contemplated, or the health to be injured or likely to be injured.

The allegations in the indictment were, as we have seen, that the plaintiff in error neglected " to provide a certain child, then and there known by the name of Louis Kulkusky, otherwise called Louis Victor, and of which child he then and there had the care and custody, and which said child was then and there in his custody, and was an infant of tender age, to wit, of the age of five years, and to give and administer unto the said child proper, wholesome and sufficient food, meat, drink, warmth, clothing, bed covering and means of cleanliness, and did therein and thereby willfully cause and permit the health of said child to be injured." And in the second count with "willful neglect to provide with, and to give and administer unto said child due, proper and sufficient medicine and

medical attendance and care, when so, as aforesaid, diseased, sick and ailing, and did therein and thereby willfully cause and permit the health of said child, to wit, the·infant aforesaid, to be injured." These allegations were distinct as to the elements of the offense, namely, a willful omission to give the boy proper and wholesome food, and a willful neglect to provide and give to him, when sick, proper medicine and medical attendance. These willful omissions were of acts which the plaintiff in error was obliged, by his custody of the child, to perform, from the trust reposed in him, and which he undertook to discharge, and were within the meaning of the statute, and the discharge of which it was designed to enforce, and therefore to secure. The charge rested upon affirmations of negative acts on the part of the plaintiff in error willfully omitted, for which he was called upon to answer. The plaintiff in error was not put upon trial for the omission to perform them for any one day; but for a series of omissions, extending over a period of time, which resulted in endangering the health of the boy named. Under such circumstances it was proper to charge in the indictment that the offense was committed upon a particular day after the consequences of the neglect were developed. Where the offense charged is one which is accomplished by several acts at separate times, they may be stated to have been done at the same time. (Bishop's Crim. Pro., § 397, note 4; *Rex* v. *Moore*, 2 Leach, 575.) The evidence given upon the trial showed, as already suggested, that the injury to the health of the boy, Louis Victor, was the result of several acts at separate times which the plaintiff in error was called upon to perform, but omitted to accomplish. If it were necessary to allege in the indictment the omission on each particular day, it would in effect present a recapitulation of the evidence by which the offense was to be established upon the trial (which is not demanded by any precedent), and would lead to great prolixity and confusion. It is the result of these several acts which the statute is designed to punish, and it is the result, therefore, which establishes the offense. For these reasons it is thought that the indictment is not assailable, and that the objections to it cannot be sustained.

The prosecution gave evidence showing the condition of the boy: the manner in which he was cared for whilst· in the charge of the

plaintiff in error, and the consequences of it; and left it for the jury to determine, under proper instructions, whether the plaintiff in error had discharged the duty imposed upon him by the statute, and this necessarily involved a consideration of what he had omitted to do, and the result of his conduct, if willful. It became necessary, also, in order to establish the offense, to go into details with regard to the omissions set out in the indictment, and this properly required the examination of experts as to the physical condition of the boy, as well as the food supplied, its quantity and quality, and his general mode of life, as directed, supervised and controlled by the plaintiff in error, in whose custody, and under whose management he had been placed, with the consent, if not at the solicitation of the latter. The prosecution was met almost step by step with opposition from the counsel of the plaintiff in error, who displayed great zeal in the defense of their client, and great devotion to his cause. No opportunity seems to have been omitted to present an objection, which was generally followed by an exception. Some of the exceptions, however, have not been presented for consideration on the brief submitted, and upon examination they are deemed to possess no merit. In disposing of the exceptions which were fully presented, it is deemed the better plan to take them up in the order in which they were considered on the argument.

The first of these arises upon a question which was asked of Ann Massey, a witness for the people. It appears by the evidence that the boy was taken to St. Luke's Hospital on December 26, 1879. The witness mentioned testified that, having made inquiry at the Shepherd's Fold on the Sunday after Christmas Day about the boy, and having ascertained that he had been taken to the hospital, she went there to see him, and did see him. She had stated that she had seen him two years before that time, and was asked the following question: "Did he look the same that he did when you saw him before?" This question was objected to, and a discussion ensued which resulted in the court's determining to allow it to be put, the witness having seen the boy three days after he was taken to the hospital, and the court having expressed the opinion that it was competent to show what the condition of the boy was

at that time, namely, within three days after he was delivered at the hospital by the plaintiff in error or his agents. But the record shows that this question was not answered, and it was not repeated. The question which followed the discussion referred to was this: "What was his condition when you saw him in the hospital?" to which no objection was made, and which is an entirely different question from the one objected to. The exception considered, therefore, amounts to nothing.

The next exception relates to the evidence of a physician (Dr. Ridlon), who was present at St. Luke's Hospital when the boy was brought there December 26, 1879, and who testified that he examined the child on the day of his arrival. He was asked to state what that examination disclosed, which was objected to, allowed, and an exception taken. He was also asked the following question, "Will you state to what, in your opinion as a medical man, the condition of the child was owing?" This testimony was objected to for reasons similar to those advanced in support of the objection to the question put to the previous witness, Ann Massey; and we find on looking into the brief on behalf of the plaintiff in error a statement that the answer of the witness responsive to the question clearly indicated the impossibility of such a condition being attributable to the act or acts of any one day, as charged in the indictment. It thus appears that the objection was founded upon what is regarded as a fallacy in reference to the form of the indictment itself, resting in the supposition that the offense having been charged to have been committed upon one day, it could not be established by showing the result of several acts leading to its commission. There can be no doubt that the evidence was proper on the part of the prosecution, because it was the condition of the boy resulting from a series of acts for which the plaintiff in error was arraigned. The exception is, therefore, wholly untenable.

The next exception springs from the examination of a witness named Fanny McCurdy, called for the prosecution, who, after testifying as to her residence in the Shepherd's Fold, was interrogated in regard to the duties imposed on her, in the following question: "Now, what did you do at the Fold during the last year?" This was objected to. But the question, though it might, abstractly

considered, be objectionable, is stripped of all obnoxious features, because it was preliminary to other questions which led to the facts that she cooked the meals that were prepared for the children, and did some washing for them, and from her position was enabled to state very important facts which sprang out of the duties which she was assigned to discharge. Her testimony, thus inaugurated, demonstrated the general management of the children, their food, clothing, and the measures adopted for their cleanliness. As these elements were part of the prosecution, as already suggested, it is impossible to conceive how the evidence elicited could have been excluded.

The next exception arises from the testimony of Dr. Jacobi, who testified that on or about January 8, 1880, about two weeks after the boy had been removed from the Shepherd's Fold, he saw and examined him. He was asked a hypothetical question, the object of which was to ascertain whether feeding a child on the diet which was named in the question would tend in any measure to account for the condition in which the boy Victor was found. The question was objected to upon the proposition seemingly that the hypothesis assumed in it was in nowise in accordance with the evidence as to the food provided for the boy, and because it referred to the child's condition at a time at least twelve days subsequent to his removal from the custody of the plaintiff in error, and when he had been provided with food of an entirely different character. The objection does not rest upon any valid ground. The question contained a correct statement of facts which for a long time marked the treatment of the boy prior to his removal to the hospital, and which, it was claimed and apparently demonstrated on the part of the prosecution, had led to the condition in which the boy was then found, because there is no pretense that he had recovered his health at that time or was in a much different condition from that in which he was when he was taken to the hospital. The prosecution had the undoubted right to show that the condition of the boy was the result of the unwholesome and improper diet which had been given him. Indeed, if they could not be permitted to prove this, and by experts, it would necessarily involve the abandonment of the further prosecution of the crime charged against the plaintiff in error.

It was the very *gravamen* of the offense, inasmuch as no other acts of cruelty, except the omission to provide him with proper medical attendance and care, were set up against the prisoner.

The next exception relates to certain photographs of the boy which were taken about January 6, and to which the attention of various witnesses was called, and which were admitted in evidence under exception. The value of this objection, if it have any, cannot be discovered. The boy had been placed in a hospital for treatment, and it is apparent from the evidence in the case that at the time of the trial his condition was improved. The object of taking the photographs was to secure an accurate representation of his *physique* at or about the time of his removal to the hospital, in order to perpetuate it, so that if any change for the better occurred it would not be impossible to illustrate his condition at that time. The use of photographs has become a very important factor in the administration of justice, and they have been employed and their use justified in several cases. In connection with scientific exposition their value cannot be over-estimated, and on the question of identity, to which their use in this case closely assimilates, and is closely allied, their importance is manifest. (See *Cozzens* v. *Higgins*, 1 Abb. Ct. App. Dec., 451; *Ruloff* v. *People*, 45 N. Y., 213.) The accuracy of the photographs was established by the evidence of several witnesses. The exception considered is therefore worthless.

The next exception occurs in the evidence of Stephen Hubbard, a police officer, who, on January 17, visited the Shepherd's Fold, and stated the result of his observations upon the premises when he went there on that day. This testimony was, perhaps abstractly considered, objectionable at the time of its introduction, but not seriously so, because what he stated as to the condition of the premises and the appearance of the children had been substantially stated by several witnesses, and this bore upon the treatment of the boy Victor, and by the evidence introduced on the part of the defense, became important as rebutting testimony. It is quite clear, therefore, that under all the circumstances it could by no possibility have worked to the prejudice of the plaintiff in error.

The next exception in order arose from the motion of the counsel

for the plaintiff in error that the court direct an acquittal upon two grounds, stated as follows : " First, because, under the requirement of the fourth section of the act, there has been no proof of any act charged, either in the first or second count of the indictment, which counts alone are on trial—that on any given day, as the statute seems to require, and as the pleading alone refers to, the act was done ; and secondly, upon the ground that the evidence is legally insufficient, even if your honor shall deny the motion on the first ground, to warrant the jury under any circumstances in rendering any other verdict but one of acquittal, or to warrant the court in entering or rendering judgment upon any verdict. The second proposition embraces matter that is new to the court so far as any question raised by the defense is concerned. If your honor should sustain the position, that, under this indictment, and upon this statute, there can be any proper verdict relating to a resultant effect from the continued condition of a series of acts, the only evidence which the prosecution has presented is that of medical experts, and the medical experts create precisely the same alternative that the statute does. Their testimony is to the effect, solely and simply, that the condition referred to by the district attorney might produce a given result, which result, if relied upon, or that an entirely different condition might produce that result. Now we have a case, if the matter were to go to the jury now, it would be your honor's duty, I submit, to direct the jury that the case of the prosecution was not proven beyond that reasonable doubt which the law requires. And, therefore, there could be no verdict properly against the defendant. That being the condition, I submit to your honor, under *People* v. *Bennett*, it would be the duty of the court to direct an acquittal where there is not sufficient legal evidence to warrant a conviction. It is the duty of the court to instruct the jury to acquit the defendant, and the failure of the court to do so is fatal error."

What the counsel regards as his first proposition on this motion seems to rest in part upon the fallacy heretofore considered, in reference to the indictment charging the offense to have been committed upon a particular day, and upon the further suggestion that the evidence was insufficient to justify a verdict. What is regarded

as the second proposition, it is a little difficult to understand precisely ; but it seems to rest upon the ground that the case of the prosecution was not established beyond a reasonable doubt, which the law requires; and it is therefore a repetition, in part, of the first. The evidence in the case would not justify its withdrawal from the jury. On the contrary, a perusal of it cannot fail to impress the legal mind with the necessity and the justice of calling upon the plaintiff in error to respond to the grave omissions charged against him, and established beyond reasonable doubt. It is deemed unnecessary to say anything more than this about these propositions.

The next exception which follows arises from the cross-examination of a witness, Mrs. Ferris, who resided on the premises of which the Shepherd's Fold was a part, and who dwelt in it six months of the time when Louis Victor was there, and who knew him and all the other children. The witness was asked the following question : " Q. Mrs. Ferris, during the time you were in the house and Louis Victor was there, did you hear Louis Victor, or any of the other children in that house, at any time, complain of hunger or insufficiency of food ?" It appears by the record that before this question was asked of Mrs. Ferris, she had been asked : " Did you ever hear any complaint of hunger ?" In reference to which a discussion took place, during which the district attorney, who had arrested the answer, said, " We offered to prove that these children complained of hunger, and it was excluded. We simply want fair play." To which Mr. Brooke responded, among other things : " I offer to show by her that neither Louis Victor nor any of the children complained of hunger." Whereupon the court decided to allow the question, but confined it to Louis Victor. Thereupon the question already set out was asked, and an exception was taken to the limit placed upon it by the learned court. The fact which the question is designed to establish, was, it must be remarked, stated by several witnesses called on behalf of the plaintiff in error, and by himself also. It must be said, therefore, that the omission of this witness to testify to the fact, if such an omission really occurred, could not have prejudiced the plaintiff in error. But the fact appears by the record that the witness stated before the question was asked that she never heard any complaint of hunger.

This was stated in the following response to the question given :
" Q. Were the girls or the children in the habit of going into your
room repeatedly ?"  " A. Yes, sir ; they came into my room and
was just as social around me from the oldest to the youngest.   They
were there with me daily and coming in at night and bidding me
good-night, often the oldest girls, Bessie and Fannie, and that was
one thing that I always thought was mysterious, that if they were
starved they never told me they were hungry."   There was no
motion made to strike out this evidence, and therefore the witness
had already testified to the fact that the children who were in the
habit of going into her room repeatedly, never told her that they
were hungry, and consequently never complained of hunger.

The next exception in order arises from the testimony of Walter
A. Hawes, who was interrogated on cross-examination as to some
of the children brought to his office on January 16, and was asked
in what condition they were when they were brought.   This was
objected to on the ground that it was long after the time when
Louis Victor was taken away.   But Mr. Hawes was examined on
the part of the plaintiff in error, and the defense had gone into
evidence to show the general condition of the children, and sought
to establish that it was good, and consequently the facts elicited
affecting that element of the defense, was perfectly proper, and the
exception is valueless.   .

This view affects another exception, but not the next in order,
relating to questions as to the condition of certain of the children,
upon the examination of the plaintiff in error himself, which was
proper for the reasons assigned in reference to the examination of
Dr. Hawes.   The subject of the general condition of the children
was introduced into the defense, and it was the right of the people
to show that that condition was not what it was represented to be,
by cross-examination of the witnesses with that view.   .

The next exception in order is that springing from the evidence
of the plaintiff in error, who was on cross-examination ·interrogated
as to his wife's means and property and his own private independent
relations and connections, all of which was admitted under objection
and exception.   It is true that these particular subjects formed no
immediate connection with the offense of which he stood accused,

but were seemingly within the limits of a cross-examination. It must be remarked, however, that the answers given were not at all prejudicial to the plaintiff in error, although it is not necessary to rest the justification of the course pursued by the recorder in admitting the evidence upon that ground, for the reasons stated, namely, it was a cross-examination, and might elicit something affecting the credibility of the witness. It is impossible to say, upon an examination of the evidence referred to, that it was not fairly within the limits of cross-examination, which, to a great extent, rests upon the discretion of the presiding judge, and which cannot be assailed unless it is clearly without the pale of a just and discriminating intelligence.

The next exception in order arises from the testimony of Annie Massey, who was recalled, and who gave proof showing that she was the sister of the stepmother of the boy Victor, and identified an envelope in the handwriting of the father of the boy described as Louis Kulkusky, otherwise called Louis Victor, which the father had written for the witness as his proper name, in order that she might be able to write to her sister in England. The envelope, after identification by the witness, was offered and received in evidence. It contained the name and address:

> Kuitakowski,
> 44 B. Hilldrop Crescent,
> Camden Road W.,
> London, England.

After this testimony had been given, the counsel for the plaintiff in error moved the court for an acquittal, because of a fatal variance between the indictment and the proof in the description of the person alleged to have been the subject of the injury described in the indictment. This motion was denied, and an exception taken. The denial was proper. The proof of the envelope by no means established the fact that the child was not known as Louis Kulkusky. The evidence, on the contrary, established conclusively that he was known as Kulkusky, and that was sufficient to sustain the indictment. (*Rex* v. *Norton*, 1 Russ. & Ry., 510; *Rex* v.

*Williams*, 7 Car. & P., 298.)   It must be said further, that whether the first name was correct or not, the name Victor was one by which the child was known in the Fold, and to the plaintiff in error ; and if either of the names was one by which the child was commonly known, it was sufficient.   On this subject there was no doubt. (*Kennedy* v. *People*, 39 N. Y., 245 ; *State* v. *Gardner*, Wright, 392.)

The remaining exceptions relate to the charge of the learned recorder and the requests to charge.   The law of the case, as expressed by him, rested upon the propositions contained in the following extracts, the doctrines of which were elaborated with reference to the evidence and its consideration.

" *First*.   That if defendant received Louis Victor into his care and custody, the law imposed upon him the duty of furnishing such reasonable, proper food, clothing, care and medical attendance as was reasonably necessary and proper to prevent his life being endangered or his health being injured, and that if he willfully, that is, intentionally, neglected to do so, and the life of the child was thereby endangered, or his health injured, he is guilty of the offense charged in the two first counts of the indictment.   It is for you to say, gentlemen, upon all the facts and all the evidence in this case, whether this defendant has or has not complied with the requirement of the law, as I have laid it down for your guidance. I charge you further :

" *Second*.   That if the defendant, during the time he had the care and custody of Louis Victor, did not have the means necessary to provide reasonably proper medical care and attention, food and nourishment to said child, so as to prevent his life being endangered or his health being injured, it was his duty to apply to the proper public authorities for such public assistance and relief in the premises as was necessary to prevent the life of said child being endangered or his health injured ; and if the prisoner willfully neglected so to do, and the child's life was thereby endangered, or his health injured, he is guilty of the offense charged in this indictment.

" *Third*.   I charge you further, that it is a cardinal doctrine of the criminal law, founded on natural justice, that it is the intention

with which an act is done or omitted to be done that constitutes its criminality; the intent and the act must concur to constitute a crime. Yet every sane person must be presumed to intend that which is the ordinary and natural consequence of his own act.

"*Fourth.* If, therefore, you find, upon all the evidence in this case, that the defendant did knowingly, that is, intentionally, do what the statute prohibited him from doing, or that he knowingly, that is, intentionally, omitted to do that which the law required he should do, the act itself being unlawful, the law implies a criminal intention on his part to do that which the law says he shall not do, or to omit to do that which the law says he shall do."

In the course of his remarks the learned recorder said, among other things, substantially, that if the plaintiff in error knowingly omitted to do what the law required him to do, he was guilty; or if he saw the child wasting away, day after day, and hour after hour, without calling in medical attendance to relieve him from his pains, sickness and distress, and this result was brought about by reason of his neglect to do so, then the simple fact that he thought he was doing the best that he could, under the circumstances, would be no excuse for his not complying with the requirements of the law; and these propositions were excepted to. Sufficient has already been said to foreshadow the view that must be taken of these exceptions. It was the omission to do certain acts, the failure to act affirmatively, which formed the basis of the complaint against the plaintiff in error, and when the law imposes a duty it cannot be dispensed with or pushed aside simply because the person thinks that in doing it in an unauthorized manner or after his own fashion he has done the best under the surrounding circumstances, in his judgment. The question, indeed, may be stated to be whether the accused has been guilty of willful neglect, irrespective of the motive or intent. The authorities sustain the views of the recorder. (*People* v. *Brooks*, 1 Denio, 457; *Commonwealth* v. *Green*, 1 Ashm., 299; *King* v. *Hollond*, 5 Durn. & E., 618; *Queen* v. *Downs*, 13 Cox C. C. 111; *Gardner* v. *People*, 62 N. Y., 299.) The plaintiff in error, in discharging his trust in the manner he performed it, took the consequences, and of course subjected himself to such legal scrutiny as might follow. He has not been sustained

in his judgment, and fails. If he had done what any prudent father would have done, he would have seen to it that the boy was cared for with all the appliances at hand, and which could be invoked in this city, distinguished for its benevolence, and the number of its charitable institutions, public and private.

The plaintiff in error also excepted to the statement in the charge: "That if the defendant is proven to have done the act charged, the burden is then upon the prisoner to satisfy you that what he did was done honestly and without any intent to commit any crime." But the exception is worthless. It is equivalent to the proposition, and no more, that if the people made out a case against the accused beyond a reasonable doubt, it was his duty to overcome it if he could. If this be not good law then no person charged with crime can be convicted. The jury had been advised of what they should find to fasten the commission of the offense charged upon the plaintiff in error, and they were instructed upon the question of doubt, and therefore the text objected to must be considered with reference to the whole, from which it is extracted.

These are all the exceptions to the charge itself, except one, which it is not deemed necessary to consider. The charge was clear, distinguishing, and eminently impartial.

The accusation against the plaintiff in error, and the proof given to sustain it, was well calculated to excite feeling against him, because, in taking upon himself the care and custody of children, he assumed a solemn trust which imposed upon him no light duties, and demanded of him great care and devotion in the observance and discharge of them; it placed him as to them *in loco parentis*, and called upon him to keep this position in constant view. If the burden was too great, he could have cast it off and left his trusts to others; or if his means were inadequate to the trust, he could have pursued a similar course, if his appeals for aid were unanswered, and thus relieved himself from all responsibility. The recognition of this trust and its solemn obligations created the statute under which he was tried, and high public moral and benevolent considerations sustain it as an important element of our criminal law, which is to be enforced against those who willfully violate its provisions. If it be subject to any criticism, it is that it is too

lenient in its characteristics, too gentle in its demands upon persons who assume the custody of children and control them, therefore, at the most important period of their lives, and mould either a good or evil future by precedent or profession, teaching or example.

A careful examination of the requests to charge, which were declined, has failed to disclose any error on the part of the recorder in his rulings. The plaintiff in error sought to obtain a too favorable interpretation of the law on his behalf, and of the effect of certain considerations of the evidence as well, and failed for that reason to secure the concurrence of the learned court in the views presented on his behalf. The conclusion that the plaintiff in error was fairly and justly dealt with, impresses itself clearly upon the mind after a dispassionate examination of all the evidence. Every means to shield him from the consequences of his omissions of duty seem to have been resorted to on the trial by his advocates, but in vain, because the jury were unable to resist the overwhelming effect of the facts and circumstances disclosed against him.

The judgment must be affirmed.

Barrett, J., concurred.

Daniels, J.:

After a thorough examination of the points presented on behalf of the prisoner, I am satisfied that there is nothing in the case which will justify a reversal of his conviction. The objections taken have been so fully considered by Mr. Justice Brady that nothing is required to be added to what he has said. His examination has been able, minute and complete. And I fully concur in his opinion.

Judgment affirmed. Motion for bail denied.