OPINION OF THE COURT
Bellacosa, J.
The defense of mistake of law (Penal Law § 15.20 [2] [a], [d]) is not available to a Federal corrections officer arrested in a Manhattan social club for possession of a loaded .38 caliber automatic pistol who claimed he mistakenly believed he was entitled, pursuant to the interplay of CPL 2.10, 1.20 and Penal Law § 265.20, to carry a handgun without a permit as a peace officer.
In a prior phase of this criminal proceeding, defendant’s motion to dismiss the indictment upon which he now stands convicted was granted (94 Misc 2d 367); then it was reversed and the indictment reinstated by a divided Appellate Division (71 AD2d 346); next, defendant allowed an appeal from that order, certified to the Court of Appeals, to lapse and be dismissed (Oct. 22, 1980). Thus, review of that aspect of the case is precluded (People v Corley, 67 NY2d 105).
On the trial of the case, the court rejected the defendant’s argument that his personal misunderstanding of the statutory definition of a peace officer is enough to excuse him from *385 criminal liability under New York’s mistake of law statute (Penal Law § 15.20). The court refused to charge the jury on this issue and defendant was convicted of criminal possession of a weapon in the third degree. We affirm the Appellate Division order upholding the conviction.
Defendant was a Federal corrections officer in Danbury, Connecticut, and asserted that status at the time of his arrest in 1977. He claimed at trial that there were various interpretations of fellow officers and teachers, as well as the peace officer statute itself, upon which he relied for his mistaken belief that he could carry a weapon with legal impunity.
The starting point for our analysis is the New York mistake statute as an outgrowth of the dogmatic common-law maxim that ignorance of the law is no excuse. The central issue is whether defendant’s personal misreading or misunderstanding of a statute may excuse criminal conduct in the circumstances of this case.
The common-law rule on mistake of law was clearly articulated in Gardner v People (62 NY 299). In Gardner, the defendants misread a statute and mistakenly believed that their conduct was legal. The court insisted, however, that the "mistake of law” did not relieve the defendants of criminal liability. The statute at issue, relating to the removal of election officers, required that prior to removal, written notice must be given to the officer sought to be removed. The statute provided one exception to the notice requirement: "removal * * * shall only be made after notice in writing * * * unless made while the inspector is actually on duty on a day of registration, revision of registration, or election, and for improper conduct” (L 1872, ch 675, § 13). The defendants construed the statute to mean that an election officer could be removed without notice for improper conduct at any time. The court ruled that removal without notice could only occur for improper conduct on a day of registration, revision of registration or election.
In ruling that the defendant’s misinterpretation of the statute was no defense, the court said: "The defendants made a mistake of law. Such mistakes do not excuse the commission of prohibited acts. 'The rule on the subject appears to be, that in acts mala in se, the intent governs, but in those mala prohibita, the only inquiry is, has the law been violated?’ (3 Den., 403). The act prohibited must be intentionally done. A mistake as to the fact of doing the act will excuse the party, *386 but if the act is intentionally done, the statute declares it a misdemeanor, irrespective of the motive or intent * * * The evidence offered [showed] that the defendants were of [the] opinion that the statute did not require notice to be given before removal. This opinion, if entertained in good faith, mitigated the character of the act, but was not a defence [sic]” (Gardner v People, 62 NY 299, 304, supra). This is to be contrasted with People v Weiss (276 NY 384) where, in a kidnapping case, the trial court precluded testimony that the defendants acted with the honest belief that seizing and confining the child was done with "authority of law”. We held it was error to exclude such testimony since a good-faith belief in the legality of the conduct would negate an express and necessary element of the crime of kidnapping, i.e., intent, without authority of law, to confine or imprison another. Subject to the mistake statute, the instant case, of course, falls within the Gardner rationale because the weapons possession statute violated by this defendant imposes liability irrespective of one’s intent.
The desirability of the Gardner-type outcome, which was to encourage the societal benefit of individuals’ knowledge of and respect for the law, is underscored by Justice Holmes’ statement: "It is no doubt true that there are many cases in which the criminal could not have known that he was breaking the law, but to admit the excuse at all would be to encourage ignorance where the law-maker has determined to make men know and obey, and justice to the individual is rightly outweighed by the larger interests on the other side of the scales” (Holmes, The Common Law, at 48 [1881]).
The revisors of New York’s Penal Law intended no fundamental departure from this common-law rule in Penal Law § 15.20, which provides in pertinent part:
"§ 15.20. Effect of ignorance or mistake upon liability.
* * *
"2. A person is not relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief that it does not, as a matter of law, constitute an offense, unless such mistaken belief is founded upon an official statement of the law contained in (a) a statute or other enactment * * * (d) an interpretation of the statute or law relating to the offense, officially made or issued by a public servant, agency, or body legally charged or empowered with the responsibility *387 or privilege of administering, enforcing or interpreting such statute or law.”
This section was added to the Penal Law as part of the wholesale revision of the Penal Law in 1965 (L 1965, ch 1030). When this provision was first proposed, commentators viewed the new language as codifying "the established common law maxim on mistake of law, while at the same time recognizing a defense when the erroneous belief is founded upon an ‘official statement of the law’ ” (Note, Proposed Penal Law of New York, 64 Colum L Rev 1469, 1486 [1964]).
The defendant claims as a first prong of his defense that he is entitled to raise the defense of mistake of law under section 15.20 (2) (a) because his mistaken belief that his conduct was legal was founded upon an official statement of the law contained in the statute itself. Defendant argues that his mistaken interpretation of the statute was reasonable in view of the alleged ambiguous wording of the peace officer exemption statute, and that his "reasonable” interpretation of an "official statement” is enough to satisfy the requirements of subdivision (2) (a). However, the whole thrust of this exceptional exculpatory concept, in derogation of the traditional and common-law principle, was intended to be a very narrow escape valve. Application in this case would invert that thrust and make mistake of law a generally applied or available defense instead of an unusual exception which the very opening words of the mistake statute make so clear, i.e., "A person is not relieved of criminal liability for conduct * * * unless” (Penal Law § 15.20). The momentarily enticing argument by defendant that his view of the statute would only allow a defendant to get the issue generally before a jury further supports the contrary view because that consequence is precisely what would give the defense the unintended broad practical application.
The prosecution further counters defendant’s argument by asserting that one cannot claim the protection of mistake of law under section 15.20 (2) (a) simply by misconstruing the meaning of a statute but must instead establish that the statute relied on actually permitted the conduct in question and was only later found to be erroneous. To buttress that argument, the People analogize New York’s official statement defense to the approach taken by the Model Penal Code (MPC). Section 2.04 of the MPC provides:
*388 "Section 2.04. Ignorance or Mistake.
"(3) A belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense based upon such conduct when * * * (b) he acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in (i) a statute or other enactment” (emphasis added).
Although the drafters of the New York statute did not adopt the precise language of the Model Penal Code provision with the emphasized clause, it is evident and has long been believed that the Legislature intended the New York statute to be similarly construed. In fact, the legislative history of section 15.20 is replete with references to the influence of the Model Penal Code provision (see, Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 15.20, at 36; LaFave and Scott, Substantive Criminal Law § 5.1, n 95; Drafting a New Penal Law of New York: An Interview with Richard Denzer, 18 Buffalo L Rev 251, 252 [1968-1969]). The proposition that New York adopted the MPC general approach finds additional support in the comments to section 2.04 (see, Model Penal Code § 2.04, comment 3, n 33, at 279 [Official Draft and Revised Comments 1985]). It is not without significance that no one for over 20 years of this statute’s existence has made a point of arguing or noting or holding that the difference in wording has the broad and dramatically sweeping interpretation which is now proposed. Such a turnabout would surely not have been accidentally produced or allowed. New York’s drafters may even have concluded that the extra clause in the MPC was mere surplus-age in view of the clear exceptionability of the mistake authorization in the first instance. Moreover, adding specified conditions by judicial construction, as the dissenters would have to do to make the mistake exception applicable in circumstances such as these, would be the sheerest form of judicial legislation.
It was early recognized that the "official statement” mistake of law defense was a statutory protection against prosecution based on reliance of a statute that did in fact authorize certain conduct. "It seems obvious that society must rely on some statement of the law, and that conduct which is in fact 'authorized’ * * * should not be subsequently condemned. The threat of punishment under these circumstances can have no deterrent effect unless the actor doubts the validity of the *389 official pronouncement — a questioning of authority that is itself undesirable” (Note, Proposed Penal Law of New York, 64 Colum L Rev 1469, 1486 [emphasis added]). While providing a narrow escape hatch, the idea was simultaneously to encourage the public to read and rely on official statements of the law, not to have individuals conveniently and personally question the validity and interpretation of the law and act on that basis. If later the statute was invalidated, one who mistakenly acted in reliance on the authorizing statute would be relieved of criminal liability. That makes sense and is fair. To go further does not make sense and would create a legal chaos based on individual selectivity.
In the case before us, the underlying statute never in fact authorized the defendant’s conduct; the defendant only thought that the statutory exemptions permitted his conduct when, in fact, the primary statute clearly forbade his conduct. Moreover, by adjudication of the final court to speak on the subject in this very case, it turned out that even the exemption statute did not permit this defendant to possess the weapon. It would be ironic at best and an odd perversion at worst for this court now to declare that the same defendant is nevertheless free of criminal responsibility.
The "official statement” component in the mistake of law defense in both paragraphs (a) and (d) adds yet another element of support for our interpretation and holding. Defendant tried to establish a defense under Penal Law § 15.20 (2) (d) as a second prong. But the interpretation of the statute relied upon must be "officially made or issued by a public servant, agency or body legally charged or empowered with the responsibility or privilege of administering, enforcing or interpreting such statute or law.” We agree with the People that the trial court also properly rejected the defense under Penal Law § 15.20 (2) (d) since none of the interpretations which defendant proffered meets the requirements of the statute. The fact that there are various complementing exceptions to section 15.20, none of which defendant could bring himself under, further emphasizes the correctness of our view which decides this case under particular statutes with appropriate precedential awareness.
It must also be emphasized that, while our construction of Penal Law § 15.20 provides for narrow application of the mistake of law defense, it does not, as the dissenters contend, "rule out any defense based on mistake of law.” (See, dissent *390 ing opn, at 399-400.) To the contrary, mistake of law is a viable exemption in those instances where an individual demonstrates an effort to learn what the law is, relies on the validity of that law and, later, it is determined that there was a mistake in the law itself.
The modern availability of this defense is based on the theory that where the government has affirmatively, albeit unintentionally, misled an individual as to what may or may not be legally permissible conduct, the individual should not be punished as a result. This is salutary and enlightened and should be firmly supported in appropriate cases. However, it also follows that where, as here, the government is not responsible for the error (for there is none except in the defendant’s own mind), mistake of law should not be available as an excuse (see, Jeffries, Legality, Vagueness and the Construction of Penal Statutes, 71 Va L Rev 189, 208 [1985]).
We recognize that some legal scholars urge that the mistake of law defense should be available more broadly where a defendant misinterprets a potentially ambiguous statute not previously clarified by judicial decision and reasonably believes in good faith that the acts were legal. Professor Perkins, a leading supporter of this view, has said: "[i]f the meaning of a statute is not clear, and has not been judicially determined, one who has acted 'in good faith’ should not be held guilty of crime if his conduct would have been proper had the statute meant what he 'reasonably believed’ it to mean, even if the court should decide later that the proper construction is otherwise.” (Perkins, Ignorance and Mistake in Criminal Law, 88 U Pa L Rev 35, 45.) In support of this conclusion Professor Perkins cites two cases: State v Cutter (36 NJL 125) and Burns v State (123 Tex Crim 611, 61 SW2d 512). In both these cases mistake of law was viewed as a valid defense to offenses where a specific intent (i.e., willfully, knowingly, etc.) was an element of the crime charged. In Burns, the court recognized mistake of law as a defense to extortion. The statute defining "extortion” made the "willful” doing of the prohibited act an essential ingredient of the offense. The court, holding that mistake of law is a defense only where the mistake negates the specific intent required for conviction, borrowed language from the Cutter case: "In State v Cutter * * * the court said: 'The argument goes upon the legal maxim ignorantia legis neminem excusat. But this rule, in its application to the law of crimes, is subject * * * to certain important exceptions. Where the act done is malum in se, or where the law which *391 has been infringed was settled and plain, the maxim, in its rigor, will be applied; but where the law is not settled, or is obscure, and where the guilty intention, being a necessary constituent of the particular offence, is dependent on a knowledge of the law, this rule, if enforced, would be misapplied’ ” (Burns v State, 123 Tex Crim, at 613, 61 SW2d, at 513, supra [emphasis added]). Thus, while Professor Perkins states that the defense should be available in cases where the defendant claims mistaken reliance on an ambiguous statute, the cases he cites recognize the defense only where the law was ambiguous and the ignorance or mistake of law negated the requisite intent (see also, People v Weiss, 276 NY 384, supra). In this case, the forbidden act of possessing a weapon is clear and unambiguous, and only by the interplay of a double exemption does defendant seek to escape criminal responsibility, i.e., the peace officer statute and the mistake statute.
We conclude that the better and correctly construed view is that the defense should not be recognized, except where specific intent is an element of the offense or where the misrelied-upon law has later been properly adjudicated as wrong. Any broader view fosters lawlessness. It has been said in support of our preferred view in relation to other available procedural protections: "A statute * * * which is so indefinite that it 'either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law’ and is unconstitutional. If the court feels that a statute is sufficiently definite to meet this test, it is hard to see why a defense of mistake of law is needed. Such a statute could hardly mislead the defendant into believing that his acts were not criminal, if they do in fact come under its ban * * * [I]f the defense of mistake of law based on indefiniteness is raised, the court is * * * going to require proof * * * that the act was sufficiently definite to guide the conduct of reasonable men. Thus, the need for such a defense is largely supplied by the constitutional guarantee” (Hall and Seligman, Mistake of Law and Mens Rea, 8 U Chi L Rev 641, 667 [1941]).
Strong public policy reasons underlie the legislative mandate and intent which we perceive in rejecting defendant’s construction of New York’s mistake of law defense statute. If defendant’s argument were accepted, the exception would swallow the rule. Mistakes about the law would be encouraged, rather than respect for and adherence to law. There *392 would be an infinite number of mistake of law defenses which could be devised from a good-faith, perhaps reasonable but mistaken, interpretation of criminal statutes, many of which are concededly complex. Even more troublesome are the opportunities for wrongminded individuals to contrive in bad faith solely to get an exculpatory notion before the jury. These are not in terrorem arguments disrespectful of appropriate adjudicative procedures; rather, they are the realistic and practical consequences were the dissenters’ views to prevail. Our holding comports with a statutory scheme which was not designed to allow false and diversionary stratagems to be provided for many more cases than the statutes contemplated. This would not serve the ends of justice but rather would serve game playing and evasion from properly imposed criminal responsibility.
Accordingly, the order of the Appellate Division should be affirmed.