OPINION OF THE COURT
Memorandum.
Ordered that the judgments of conviction are affirmed.
Defendant was charged in separate informations with trespass (Penal Law § 140.05) and harassment in the second degree (Penal Law § 240.26 [3]). At a nonjury trial, defendant’s daughter testified to a history of estrangement from her father, a series of antagonistic verbal encounters, her voluntary removal from the parental home to the home of an aunt, and, notwithstanding her insistence that defendant refrain from any communication with her, his unwanted visits to her at her aunt’s home, from which, at least once, he was removed with *4 police assistance. Following her enrollment at Westchester Community College (WCC), defendant’s daughter learned that defendant had appeared on the campus seeking information about her and her whereabouts. On September 23, 2011, she reported defendant’s conduct to the WCC campus director of security, expressing her fears and stating that she wanted no contact with defendant. The director of security for WCC testified that, on the same day, he received reports from the art department that an “unusual and suspicious” person had been observed “hanging around” near where defendant’s daughter was attending class. Defendant’s daughter also testified that, on September 28, 2011, defendant called out to her in front of a campus building, whereupon she fled and reported the incident to the campus security office. The security director testified that, on that same day, he located defendant and advised him that his daughter did not want to communicate with him, that he was to refrain from visiting the campus for that purpose, and that if he did so, he would be subject to arrest for trespass. Defendant’s daughter further testified that, on November 18, 2011, she observed defendant approaching her in the lounge area of a WCC library and retreated into a restroom, where she remained until satisfied that defendant had departed. She then contacted the campus security office, whereupon defendant was arrested, on the campus, for trespass and harassment in the second degree.
Defendant testified that he had entered the WCC campus on November 18, 2011 to discuss with his daughter matters relevant to her academic and financial welfare; that the security officer’s order had illegally precluded him from a premises which is open to the public; and that he had understood the exclusion order to mean that he could enter the WCC campus to communicate with his daughter if he had other, legitimate reasons for that presence which did not concern his daughter.
Following the trial, the Justice Court convicted defendant of the charges. Defendant appeals, asserting, in essence, the arguments he raised at trial. Although defendant’s challenges to the legal sufficiency of the evidence are unpreserved for appellate review (CPL 470.05 [2]; People v Hawkins, 11 NY3d 484, 492 [2008]; People v Gray, 86 NY2d 10, 19 [1995]), we grant defendant’s request that we review the claims in the interest of justice.
“A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises” (Penal Law § 140.05). *5 A person acts knowingly “when he is aware that his conduct is of such nature or that such circumstance exists” (Penal Law § 15.05 [2]). Defendant questions the lawfulness of the exclusion order and whether the proof sufficed to establish that he had intended to violate that order (see People v Basch, 36 NY2d 154, 159 [1975] [“a person who enters upon premises ... (in the) honest( ) belie(f) that he is licensed or privileged to enter, is not guilty of any degree of criminal trespass”]).
“A person ‘enters or remains unlawfully’ in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person” (Penal Law § 140.00 [5]; see People v Barnes, 26 NY3d 986, 988 [2015]).
There is no dispute that the security officer, an authorized representative of WCC, personally informed defendant that he may not return to the campus “to try to make contact with [his daughter],” who wanted no contact with him; that defendant “could not use the college and the campus as a way to get to his daughter”; and that a violation of that order would result in his arrest for trespass. This communication afforded defendant notice that future entry onto the campus for the purpose of contacting his daughter would subject him to arrest (see e.g. Godinez v Siena Coll., 288 AD2d 659, 661 [2001]; People v Munroe, 18 Misc 3d 9, 10 [App Term, 2d Dept, 9th & 10th Jud Dists 2007]). As for the authority of WCC to exclude him, in People v Leonard (62 NY2d 404 [1984]), the Court of Appeals acknowl edged that, while the SUNY-Binghamton campus is “at all times ‘open to the public’ within the meaning of section 140.00 of the Penal Law” and is one which “the public enjoys broad license to utilize” {id. at 410), the institution is “generally empowered to exclude persons from the university campus” (id. at 408) for “legitimate” reasons that are “rationally related to the power to maintain order on the campus” and do not “unlawfully inhibit or circumscribe . . . constitutionally or statutorily protected conduct” (id. at 411-412). WCC, the institutional equivalent of SUNY-Binghamton, has “broad power and great flexibility in maintaining order and securing the safety of others on the school campus” and may exclude persons “who have flouted basic rules of order” (id. at 410). The *6 exclusion order herein had a legitimate basis, and whatever defendant’s motives in attempting to communicate with his daughter, they did not legitimize contact that she had expressly rejected (see People v Shack, 86 NY2d 529, 536-537 [1995]). Defendant was not a student at WCC nor did he otherwise have license to enter the WCC campus aside from being a member of the public, and the record establishes no “constitutionally or statutorily protected conduct” that would supersede WCC’s exercise of its authority to maintain order and the security of its students in the manner that it did.
Defendant also contends that the trial proof failed to establish his knowledge that he was illegally present on the WCC campus on November 18, 2011, in light of his testimony that he honestly, if mistakenly, construed the security officer’s warning to state that he could not enter the WCC campus only if his sole purpose was to contact his daughter, and that he had another, legitimate, reason for being present on the campus, namely, to further his personal educational goals. While an honest mistake of law may, under appropriate circumstances, absolve an accused of criminal liability (see Penal Law § 15.20 [2]; People v Basch, 36 NY2d at 159), the defense requires a showing that defendant was misled “as to what may or may not be legally permissible conduct” (People v Marrero, 69 NY2d 382, 390 [1987]). Here, defendant was arrested after locating and attempting to communicate with his daughter contrary to the order’s unambiguous mandate, and there is no evidence in the record, aside from defendant’s testimony as to his intentions, that defendant ever had contact with anyone on the WCC campus for purposes other than to obtain information about his daughter and to communicate with her. Finding incredible defendant’s assertions as to his reasons for being on the campus aside from contacting his daughter, the Justice Court concluded that defendant “had no rational connection or legitimate reason for being or remaining on the campus of WCC, except to further his own personal interest in communicating with his daughter,” essentially a credibility determination. The Justice Court also found, in effect, that the evidence did not support an inference that he “honestly misunderstood his duties” under the exclusion order (People v Dandridge, 45 AD3d 330, 332 [2007]; see e.g. People v Holmberg, 243 AD2d 893, 894 [1997] [whether the defendant “honestly, albeit mistakenly, believed that his (conduct was) authorized . . . and thus did not harbor the requisite specific intent . . . essentially presented a credibility *7 question which (the trial court) . . . resolved in the People’s favor”]; People v Mehta, 140 AD2d 987, 988 [1988] [same]). A trial court’s credibility determinations are accorded great weight on appeal unless clearly unsupported by the record (People v Reaves, 112 AD3d 746, 747 [2013]; People v Isles, 304 AD2d 590, 591 [2003]), which is not the case here. In any event, defendant admitted at the trial that, on the day of his arrest, he was present on the campus, at least in part, to contact his daughter, and by no reasonable interpretation of law or fact could defendant have construed the exclusion order to mean that he could enter the WCC campus to contact his daughter so long as he also had other, unrelated reasons for doing so (see e.g. People v Pettersen, 130 AD3d 1536, 1537 [2015] [rejecting the defendant’s contention that he was entitled to a mistake of law instruction based on his “good faith misunderstanding” of certain regulations because “(n)o government official issued a statement authorizing the conduct in question and, indeed, defendant was warned by governmental officials that his conduct was improper”]).
Defendant’s conviction of harassment in the second degree is also supported by the evidence. Defendant insists that he never intended to harass his daughter and that his only purpose in communicating with her was his “concern for [her] well-being,” notwithstanding that she may subjectively have experienced his conduct as harassing (see People v Caulkins, 82 AD3d 1506, 1507 [2011]; William C. Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 240.26). It is an element of the offense of harassment in the second degree in violation of Penal Law § 240.26 (3) that the accused intentionally engaged in a “course of conduct” or repeatedly committed acts which alarmed or seriously annoyed another person “and which serve [d] no legitimate purpose.” Where a defendant’s communications are the issue, their “nature, content and volume” should be considered (People v Sonee, 25 Misc 3d 128[A], 2009 NY Slip Op 52076[U], *1 [App Term, 1st Dept 2009]). We find that the trial evidence supports an inference that defendant’s “conscious objective” (Penal Law § 15.05 [1]) was to engage in conduct (Penal Law § 240.26 [3]) knowing that it alarmed and seriously annoyed his daughter, whatever his subjective view of the legitimacy of his motives.
Accordingly, the judgments of conviction are affirmed.
Maraño, P.J., Iannacci and Garguilo, JJ., concur.