[No. 25510-3-II.   Division Two.   July 20, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID SHANE LEAVITT, *Appellant*.

*Clayton R. Dickinson*, for appellant (appointed counsel for appeal).

*Gerald A. Horne, Prosecuting Attorney*, and *Michael L. Sommerfeld, Deputy*, for respondent.

HUNT, A.C.J. — David Shane Leavitt appeals six convictions for illegal possession of a firearm. He argues, and the State agrees, that the sentencing court for the underlying predicate conviction failed to give him the statutorily required notice prohibiting firearm possession. We agree with Leavitt that the predicate-conviction sentencing court's failure to comply with RCW 9.41.047, together with other circumstances, prejudiced him. Accordingly, we reverse.

## FACTS

### I. PREDICATE CONVICTION

In 1998, Leavitt pleaded guilty to one count of violation of a protective order, a gross misdemeanor, contrary to RCW 26.50.110(1). His Statement of Defendant on Plea of Guilty listed as the maximum sentence "1 yr/$5000." Among the sentencing recommendations that the prosecutor promised to make were "law abiding behavior and no possession of firearms."

The court imposed a one-year sentence, suspended on several conditions, including: "(1) no hostile contact with Sharon Edvalds-Leavitt, no contact with Chris Hardy or Karin Klepfer, (2) no possession of firearms (forfeit guns), (3) no violation of criminal law,[1] (4) 365 days in jail with 363 days suspended. Credit for 2 days served." Clerk's Papers at 65. The Conditions on Suspended Sentence provided, "Termination date is to be 1 year(s) after date of sentence."

The court did not require Leavitt to relinquish his concealed weapon permit or his firearms. Nor did the court instruct Leavitt that RCW 9.41.047's prohibition against possessing firearms applied and extended beyond his one-year probationary period, such that he could not again possess firearms without first petitioning for restoration of that privilege. Moreover, the Conditions, Requirements and Instructions that the Department of Corrections furnished to Leavitt left blank the box next to the paragraph explaining RCW 9.41.047's firearm possession prohibition, thereby suggesting that this particular condition did not apply to Leavitt.

Assuming that all the probation conditions applied for the same 365-day period, Leavitt kept his concealed weap-

---

[1] Adding to the confusion, the 1998 court that accepted Leavitt's guilty plea stated that his suspended sentence required, among other conditions, "one year law abiding behavior." Clerk's Papers at 59. But the written Conditions on Suspended Sentence stated that Leavitt was required to have "no violation of criminal law" without stating a time period in writing. Yet the court stated verbally the "no violation of criminal law" restriction applied for one year.

ons permit but relinquished his firearms by delivering them to his brother in Utah. One year later, Leavitt received a letter that his probation had ended. Believing that he once again could legally possess firearms, he returned to Utah to retrieve his firearms from his brother.[2]

## II. Current Firearm Convictions

On July 28, 1999, Pierce County Sheriff deputies responded to a domestic violence call, arrested Leavitt, handcuffed him, and placed him in the back of a patrol car. Before advising him of his *Miranda*[3] rights, an officer asked Leavitt if there were any weapons in the home. Leavitt responded that there were none in the home but volunteered, "I do have weapons in my vehicle." Report of Proceedings at 21. The police searched Leavitt's vehicle and found six firearms.

The State charged Leavitt with six counts of second degree unlawful possession of a firearm. It incorrectly alleged that he had been convicted of a prior "felony," although his prior violation of a no-contact order was a gross misdemeanor.[4] Leavitt moved to dismiss for failure to provide statutory notice under CrR 8.3(b). He argued that: (1) the 1998 sentencing court violated his due process rights when it failed to advise him of a continuing prohibition against firearm possession; and (2) "it appear[ed] that this condition of no possession of firearms was simply part of the one-year of law-abiding behavior." Clerk's Papers at 2.

The trial court denied Leavitt's motion to dismiss.[5] Report of Proceedings (Dec. 7, 1999) at 2. The trial court commented that: (1) the 1998 court "clearly orally and in

---

[2] Leavitt later told the court, "I wouldn't have possessed guns or I would have gone through the legal route of retaining my rights if I had known what I do now and been properly informed." Report of Proceedings at 54.

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] Leavitt did not assign error to the faulty information.

[5] *State v. Semakula*, 88 Wn. App. 719, 946 P.2d 795 (1997), *review denied*, 134 Wn.2d 1022, 958 P.2d 317 (1998).

writing did advise that he could not have a firearm," Report of Proceedings (Dec. 7, 1999) at 3; (2) Leavitt understood that "he was 'required to obey all municipal and county laws' "; (3) "RCW 9.41.040 is certainly a law that he is required to obey";[6] and (4)

> I am persuaded by the case in the *Matter of Ness* that distinguishes between direct consequences of a plea, and I'm not sure how to resolve the legislative adoption of [RCW] 9.41.047 of what the appropriate result should be in the court's failure to orally and in writing give the precise notice that you're suggesting that the Court must give.
>
> I don't think it's in the statutes, and I'm not willing to go beyond what I see in the statutes and what I see in the case law that's been decided to date.
>
> So that's my reasoning for denying your motion to dismiss. . . . I am going to dismiss the [motion] to dismiss because I believe knowledge is not an element.

Report of Proceedings (Dec. 7, 1999) at 4-5.

Leavitt waived his right to a jury. The trial court found him guilty of violating RCW 9.41.040. At sentencing, the court noted,

> *I believe Mr. Leavitt*, and I think that although the judge said that you could not possess firearms and the plea form says no possession of firearms, you were not—*I don't think you were given orally or in writing the full notice that you were required to get by statute*, and I can appreciate how it would be confusing to somebody who isn't in the legal system who you should give up possession to and for how long the inability to possess firearms continues. . . .
>
> I think that this is *a rather unfortunate situation* for a lot of people, and *I am constrained by what the law requires*.

Report of Proceedings (Dec. 20, 1999) at 54 (emphasis added). In imposing a relatively lenient sentence for Leavitt, a first-time offender, the court concluded with the following dialogue:

> COURT: I just think I'm giving you every benefit of the doubt

---

[6] *In re Personal Restraint of Ness*, 70 Wn. App. 817, 855 P.2d 1191 (1993).

on conviction. Actual sentencing time and the trade-off seems to be forfeiting the guns.

[LEAVITT]: I appreciate that.

THE COURT: You're welcome.

Report of Proceedings (Dec. 20, 1999) at 56.

## ANALYSIS

### I. UNLAWFUL FIREARM POSSESSION

#### A. FAILURE TO PROVIDE NOTICE

RCW 9.41.047(1) provides in pertinent part:

> At the time a person is convicted of an offense making the person ineligible to possess a firearm, . . . *the convicting . . . court shall notify* the person, orally and in writing, that the person must immediately surrender any concealed pistol license and *that the person may not possess a firearm unless his or her right to do so is restored by a court of record.*

(Emphasis added.) Conviction of a misdemeanor no-contact order against a family member falls within the classes of crimes for which the Legislature has prohibited firearm possession. RCW 9.41.040(1)(b)(i). After Leavitt was convicted for such a no-contact-order violation, RCW 9.41.047(1) required the sentencing court to advise him that he could no longer possess a firearm. This the sentencing court did not do.

#### B. CONSEQUENCE OF FAILURE TO PROVIDE NOTICE

We confront here an issue of first impression: What are the consequences of a sentencing court's failure to comply with the statutory mandate of RCW 9.41.047(1)? We need not consider Leavitt's contention that such failure automatically invalidated his 1998 protection-order-violation plea of guilty "such that this offense cannot form the basis for a subsequent conviction for unlawful possession of a firearm." Nonetheless, we agree that this failure prejudiced

Leavitt and, thus, we consider the appropriate consequence.

Leavitt argues that "the failure to provide this notice must have some consequence to the [S]tate, or there is little or no motivation on the part of the judge or the prosecutor to insure that the statute is followed." Reply Br. of Appellant at 2. We agree. Here, not only did the 1998 sentencing court fail to follow RCW 9.41.047's mandate (to advise Leavitt that he could no longer possess firearms), but also that court's words and actions inadvertently misled Leavitt into believing that any restriction on firearm possession was limited to his one-year probationary period.

Consistent with Leavitt's understanding, the 1998 sentencing court did not require Leavitt to turn over his firearms or his concealed weapon permit to the court;[7] and the 1998 probation instructions appeared to focus on the one-year limitation for all his probationary conditions, including the firearm restriction. Moreover, the Department of Corrections' (DOC) written instructions for Leavitt's probation conditions reinforced his impression that the restriction on his firearm possession was limited to one year: The instructions and conditions *bypassed*, thereby omitting, the paragraph describing what appeared to be an optional, long-term, statutory firearm-possession prohibition.

That Leavitt relied to his detriment on these representations and the 1998 sentencing court's noncompliance with the statute is underscored by his guileless actions that precipitated the instant convictions: (1) Following sentencing in 1998, he relinquished his firearms but retained his concealed weapons permit, with the court's apparent, implicit acquiescence; (2) after receiving written notice that his one-year probation had ended, Leavitt retrieved his firearms from his brother; and (3) although police asked Leavitt only whether he had weapons in the house, he

---

[7] Moreover, the 1998 court used an outdated form Statement of Defendant on Plea of Guilty for Leavitt's 1998 conviction, which lacked nearly all the written notices typically provided to defendants pleading guilty.

spontaneously volunteered that he had firearms in his car, for which he was convicted and sentenced. Thus, the 1998 court's noncompliance with RCW 9.41.047 clearly and substantially prejudiced Leavitt.

The law is clear that knowledge of the *illegality* of firearm possession is not an element of the crime. Rather, the State must prove only that the defendant knew he possessed the firearm. *State v. Semakula*, 88 Wn. App. 719, 726, 946 P.2d 795 (1997), *review denied*, 134 Wn.2d 1022, 958 P.2d 317 (1998). Nevertheless, under the unusual facts of this case, we next explore whether Leavitt's conviction compromised his Fourteenth Amendment right to due process.[8]

## C. DUE PROCESS

As a Virginia appellate court aptly explained,

> The ultimate due process inquiry is whether a defendant's conviction, for reasonably and in good faith doing that which he was told he could do, is fundamentally unfair in light of the content of the information he received and its source. . . .
>
>     . . . .
>
> . . . Such concerns are implicated only when the source of the information is a public officer or body charged by law with responsibility for defining permissible conduct with respect to the offense at issue.

*Miller v. Commonwealth*, 25 Va. App. 727, 492 S.E.2d 482, 487, 488-89 (1997) (citing *Raley v. Ohio*, 360 U.S. 423, 439, 79 S. Ct. 1257, 3 L. Ed. 2d 1344 (1959)).

The *Miller* court articulated the basic conflict here—between the long-standing principle that "ignorance of the law is no defense" and the inherent unfairness of an authority figure, here, a sentencing judge, inadvertently misleading a defendant about his legal obligations such that the defendant relied on this misinformation to his detriment:

---

[8] U.S. CONST. amend. XIV, § 1: "nor shall any state deprive any person of life, liberty, or property, without due process of law."

Reflecting the axiom that everyone is "presumed to know the law," the common law rule that "ignorance of the law is no excuse" admitted of few exceptions. The common law position was based on the fact that most common law crimes were *malum in se.* Seen as "inherently and essentially evil . . . without any regard to the fact of [their] being noticed or punished by the law of the state," *Black's Law Dictionary* 959 (6th ed. 1990), ignorance of the prohibition of such crimes was simply untenable.

The rationale underlying the rule is less compelling for crimes that are *malum prohibitum, viz.,* acts that are "wrong because prohibited," not by virtue of their inherent character. *Black's Law Dictionary* 960 (6th ed. 1990). Yet, the proposition that ignorance of the law is no excuse generally maintains with respect to crimes *malum prohibitum,* largely for pragmatic purposes. . . . Although leading at times to seemingly "unfair" results, rigid application of the rule promotes the policy it serves: "to encourage people to learn and know the law." *E.g.,* . . . Oliver W. Holmes, *The Common Law* 48 (1881) . . . .

Nonetheless, "[w]ith 'the increasing complexity of law, the multiplication of crimes *mala prohibita,* and a more exact definition of fundamental principles of criminal liability,' certain exceptions to the general rule have emerged."[9] . . . .

The exception at issue addresses the legal consequences of a violation of the criminal law by an individual who takes measures to learn what conduct the government has proscribed, but is misadvised by the government itself. A number of states have adopted statutes bearing on the subject, but Virginia has not.[10]

---

[9] See 89 A.L.R.4th 1026, suggesting the following elements for the "official statement mistake of law defense," which is "difficult to establish":

(1) that the alleged statement was actually made; (2) that it was an official statement, rather than an informal opinion; (3) that the statement was in writing; (4) that the person or entity issuing the statement had actual or apparent authority to do so; (5) that the defendant actually relied on the official statement in violating the law (causation); (6) that this reliance was in good faith; (7) that this reliance was reasonable; and according to one decision, (8) that either the specific intent was an element of the offense or the misrelied-on law was later properly adjudicated as wrong.

Jeffrey F. Ghent, Annotation, *Criminal Law: "Official Statement" Mistake of Law Defense,* 89 A.L.R.4th 1026, 1030-31 (1991) (footnotes omitted).

[10] *But see, e.g.,* N.Y. Penal Law § 15.20 (McKinney):

"§ 1520. *Effect of ignorance or mistake upon liability.*

*Miller*, 492 S.E.2d at 485 (1997)[11] (alterations in original) (citations omitted).[12] Nor has the State of Washington[13] adopted such a statute.

. . . .

"2. A person is not relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief that it does not, as a matter of law, constitute an offense, unless such mistaken belief is founded upon an official statement of the law contained in (a) a statute or other enactment . . . (d) an interpretation of the statute or law relating to the offense, officially made or issued by a public servant, agency, or body legally charged or empowered with the responsibility or privilege of administering, enforcing or interpreting such statute or law."

*People v. Marrero*, 69 N.Y.2d 382, 386-87, 507 N.E.2d 1068, 1070 (1987). Section 2.04(3)(b) of the *Model Penal Code* also contains the mistake of law defense. 89 A.L.R.4th at 1030.

[11] Insofar as Miller tried to comply with the law as the State represented it to him, the facts in *Miller* are somewhat analogous to the facts in the case before us.

Miller, a convicted felon, knew he was prohibited from possessing a firearm. Knowing the prohibition extended to his hunting activities, Miller, a lifetime hunter, sold his hunting guns following his conviction. He continued to hunt with a bow and arrows until his bow was stolen.

Wanting to pursue his sport, Miller sought to determine whether he, as a convicted felon, could possess a muzzle-loading rifle. Miller knew that Virginia law distinguished muzzle-loading rifles from other guns. Specifically, he knew that Virginia did not require a criminal background check to be performed on individuals seeking to purchase muzzle-loading rifles. He also knew that Virginia defined different hunting seasons for and issued different licenses to hunters using muzzle-loading rifles.

Miller testified that he "talked to everyone who [he] thought might know the answer." He spoke with his probation officer, who told him he could have a muzzle-loading rifle. He also inquired of the Federal Bureau of Alcohol, Tobacco and Firearms (ATF) and the Virginia Department of Game and Inland Fisheries (VDGIF), and representatives from each, who knew Miller was a convicted felon, told him he could have a muzzle loader.

*Miller*, 492 S.E.2d at 484.

[12] *See also People v. Studifin*, 504 N.Y.S.2d 608, 612, 132 Misc. 2d 326 (1986) (malum prohibitum—defendant thought he could possess weapons, got a proper permit, etc., and then was arrested).

[13] Washington courts have rejected the general ignorance or mistake of law defense. But we find no published opinion where a prejudicial mistake of law is caused in whole or in substantial part by a governmental authority. *See, e.g., State v. Patterson*, 37 Wn. App. 275, 679 P.2d 416 (1984) (rejecting mistake of law as a defense where defendant claimed good faith belief, based on "common understanding," in legality of growing hallucinogenic mushrooms and marijuana, reciting a newspaper article quoting a deputy prosecuting attorney, in an unrelated context, as saying that hallucinogenic mushrooms are not illegal). *Patterson*, however, is distinguishable from *Miller* and the case before us—there was no claim or evidence that Patterson's "mistake of law" was created by misleading information from a governmental authority.

We agree with *Miller* that the "ignorance of the law" axiom should not automatically apply to malum prohibitum, such as unlawful firearm possession, in those instances where the predicate sentencing court has failed to follow the law requiring it to advise the defendant that he may no longer possess firearms. The *Miller* court referenced the United States Supreme Court's decision in *Raley*, 360 U.S. 423, which found that a governmental commission's representations to Raley were legally erroneous and "active[ly] misleading," especially because the commission was "the voice of the State most presently speaking to the [defendants]." *Miller*, 492 S.E.2d at 486 (citing *Raley*, 360 U.S. at 438-39) (alterations in original).[14]

Similarly, here, the predicate sentencing court was the "voice of the State" speaking to Leavitt, or failing to speak to Leavitt, about the constraints on his ability to possess firearms. The 1998 sentencing court had the authority and issued a written order that was binding upon Leavitt. Leavitt relied in reasonable good faith upon the terms of the written order.

Again incorporating Supreme Court doctrine, the *Miller* court noted that a denial-of-due-process defense arises

> where a defendant has reasonably relied upon affirmative assurances that certain conduct is lawful, when those assurances are given by a public officer or body charged by law with responsibility for defining permissible conduct with respect to the offense at issue. The defense is a due process defense, *Raley*, 360 U.S. at 437 . . . ; *Cox* [*v. Louisiana*], 379 U.S. [559,] 571 . . . [(1965)] grounded in "traditional notions of fairness inherent in our system of criminal justice."

*Miller*, 492 S.E.2d at 486-87.[15] The court amplified and illustrated the due process issue:

> The due process argument is, in essence, "that the criminal

---

[14] Appellate courts that have analyzed prosecutorial and police misconduct have focused on judicial oversight of executive branch operations. But our decision here focuses on misapplication of the law by the judicial branch.

[15] *See also* Sean Connelly, *Bad Advice: The Entrapment by Estoppel Doctrine in Criminal Law*, 48 U. MIAMI L. REV. 627, 632 (1994).

statute under which the defendant is being prosecuted cannot constitutionally be applied to the defendant without violating due process of law, where government officials have misled the defendant into believing that his conduct was not prohibited." *Ghent*, [Annotation, *Criminal Law: "Official Statement" Mistake of Law Defense*, 89 A.L.R. 4th 1026 (1991)] *supra*, at 1031; *see also [People v.] Studifin*, 504 N.Y.S.2d [608,] 610 [(1986).] ("[F]or the state to prosecute someone for innocently acting upon such mistaken advice is akin to throwing water on a man and arresting him because he's wet.").

*Miller*, 492 S.E.2d at 487.

Here, the predicate-conviction sentencing court did not make express "affirmative assurances," as did the non-judicial governmental official in *Miller*. Rather the court here failed to advise Leavitt that he lost his right to possess firearms for an indefinite period as required by statute, gave Leavitt written notice of an apparently one-year firearm-possession restriction, and implicitly allowed Leavitt to retain his concealed weapon permit. These combined actions and inactions of the predicate-sentencing court misled Leavitt reasonably to understand that his firearm possession restriction was limited to one year.[16] Consistent with this understanding, Leavitt dutifully complied by taking his guns to his brother out-of-state for safekeeping for one year.

Under these unique circumstances, it would be a denial of due process to require Leavitt to speculate about additional firearm-possession restrictions beyond his one-year probation where the sentencing court did not inform him otherwise, in spite of the Legislature's clear requirement to do so. *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S. Ct. 618, 619, 83 L. Ed. 888, 890 (1939).[17] *See also People v. Bray*, 52

---

[16] We note again the instant sentencing court's comment that it found credible Leavitt's explanation of his understanding of the one-year firearm restriction, but that it was constrained by the law in this "unfortunate" situation. Report of Proceedings (Dec. 20, 1999) at 54.

[17] Due process requires that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey*, 306

Cal. App. 3d 494, 124 Cal. Rptr. 913, 917 (1975) (government agencies misled Bray such that he did not know whether he had been convicted of a felony for which firearm possession was prohibited).[18] "It is neither fair nor practical" to hold defendants "to a standard of care exceeding that exercised by a judge." *United States v. Barker*, 546 F.2d 940, 947 (D.C. Cir. 1976).

Accordingly, we hold that where a defendant can demonstrate actual prejudice arising from a sentencing court's failure to comply with the statute's mandate to advise him about the statutory firearm-possession prohibition, RCW 9.41.047 cannot serve as the basis for convicting him of unlawful firearm possession. We reverse Leavitt's 1999 convictions for unlawful possession of a firearm.[19]

MORGAN and SEINFELD, JJ., concur.

---

U.S. 451, 453, 59 S. Ct. 618, 83 L. Ed. 888 (1939).

[18] "Bray on more than one occasion had been led to believe by state regulatory agencies that he was not a felon: he was allowed to vote, he was registered in an occupation allowing him to carry a gun, and he was allowed to buy and register the gun." *Bray*, 124 Cal. Rptr. at 917. *See also United States v. Tallmadge*, 829 F.2d 767, 773-74 (9th Cir. 1987), in which the court reversed a federal firearms conviction based on the doctrine of entrapment by estoppel. A federally licensed firearms dealer had told the defendant that he could purchase firearms, despite his prior conviction of felonious possession of machine gun, after the charge was reduced to a misdemeanor.

[19] We need not and do not address the issue of whether failure to follow RCW 9.41.047 alone, absent prejudice to the defendant, would similarly warrant reversal.