43 P.3d 1288 (2002)
111 Wash.App. 222
STATE of Washington, Respondent,
v.
Shawn A. LOCATI, Appellant.
No. 20025-6-III.
Court of Appeals of Washington, Division 3, Panel Eight.
April 18, 2002.
*1290 Nicholas George, Tacoma, for Appellant.
James L. Nagle, Pros. Atty., Walla Walla, for Respondent.
*1289 BROWN, C.J.
A jury convicted Shawn Locati of five counts of second degree unlawful possession of a firearm. Mr. Locati unsuccessfully raised an estoppel defense based upon his evidence of his deceased community corrections officer having given him permission to own a hunting rifle. The trial court did not err when denying his estoppel instruction because the undisputed evidence indicates after the alleged permission, Mr. Locati received specific knowledge that his possession of firearms was unlawful, thus depriving him of any claim of reasonable reliance. Further, the instructions gave Mr. Locati the ability to argue his theory of the case. Accordingly, we decide no abuse of discretion occurred and affirm.

FACTS
Mr. Locati, a felon, regained his civil rights in 1992, but without the specific right to possess firearms. In 1998, Mr. Locati tried unsuccessfully to buy a handgun from a dealer. Then, two police officers visited Mr. Locati and specifically told him he was not authorized to possess firearms. Mr. Locati told the officers he had previously purchased a handgun and that his community correction officer (CCO), Joel Heimbigner, told him he could possess a hunting rifle. The officers told Mr. Locati to "get rid of his guns and suggested he give them to his brother, a police officer at that time. Report of Proceedings (RP) at 125. Mr. Locati initially complied, but later reacquired or acquired a number of firearms.
In 1999, Mr. Locati, a rifle by his side, reported to a game warden the theft of a deer he had shot. Upon learning this, the Walla Walla County Sheriff's Office executed a search warrant at Mr. Locati's home and seized eight firearms. Eventually, by means of a fifth amended information, the State charged Mr. Locati with eight counts of unlawful possession of a firearm in the second degree, RCW 9.41.040(1)(b).
At trial, Mr. Locati admitted ownership of five of the firearms, but said two others belonged to his brother, and the last, a sawed-off shotgun, belonged to an unnamed acquaintance. Mr. Locati based his estoppel defense upon the claimed permission given to him by his CCO before he died. Mr. Locati asserted that in 1996, the CCO gave him "the okay to go ahead" and obtain a hunting rifle. RP at 154. The trial court denied Mr. Locati's request for an equitable estoppel instruction.
The jury decided guilt on the five counts for which Mr. Locati admitted firearm ownership. The jury could not agree on the remaining three counts and mistrials were declared. After Mr. Locati unsuccessfully moved to arrest the judgment and dismiss the charges based upon the State's failure to obtain leave of court to file the fifth amended information, he appealed.

ANALYSIS
The issue is whether the trial court erred by abusing its discretion when rejecting Mr. Locati's estoppel instruction.
Preliminarily, Mr. Locati, by failing to brief or argue, has abandoned his challenge to the trial court's apparent denial of his motion to arrest judgment based on alleged irregularities in amending the complaint. RAP 10.3(a)(5); Hollis v. Garwall, 137 Wash.2d 683, 689 n. 4, 974 P.2d 836 (1999). Therefore, we do not discuss the mistrial motion.
Generally, a person is guilty of unlawfully possessing a firearm in the second degree if the person owns, possesses, or controls *1291 a firearm after having been convicted of a felony other than a serious offense. RCW 9.41.040(1)(b)(i). "Knowledge that possession is unlawful is not an element of the crime of unlawful possession of a firearm nor does good faith belief that a certain activity does not violate the law provide a defense in a criminal prosecution." State v. Semakula, 88 Wash.App. 719, 724, 946 P.2d 795 (1997) (citing State v. Reed, 84 Wash.App. 379, 384, 928 P.2d 469 (1997)). Here, no dispute exists as to possession of the firearms or the predicate convictions.
"A defendant is entitled to have his or her theory of the case submitted to the jury under appropriate instructions when the theory is supported by substantial evidence." State v. Finley, 97 Wash.App. 129, 134, 982 P.2d 681 (1999) (citing State v. Washington, 36 Wash.App. 792, 793, 677 P.2d 786 (1984)), review denied, 139 Wash.2d 1027, 994 P.2d 845 (2000). "Instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury on the applicable law." State v. McLoyd, 87 Wash.App. 66, 71, 939 P.2d 1255 (1997), aff'd sub nom. by State v. Studd, 137 Wash.2d 533, 973 P.2d 1049 (1999) (citing Flint v. Hart, 82 Wash.App. 209, 223, 917 P.2d 590 (1996)).
Here, Mr. Locati apparently proposed, and the trial court rejected, some form of an estoppel instruction. It is not contained or quoted in our record. However, Mr. Locati quoted in his trial brief:
If you find that a defendant believed he was acting out of a good faith reliance upon the apparent authority of another to authorize his actions, that is a defense to the charge in Count 1, provided you find that such a mistake by a defendant was made honestly, sincerely, innocently and was a reasonable mistake to make based upon the facts as the defendant perceived them.
Clerk's Papers at 32 (quoting instruction approved in United States v. Barker, 546 F.2d 940, 949 (D.C.Cir.1976)). Based upon this record and argument, we can but speculate that the proposed instruction was similar. The record is insufficient for proper review. For example, we do not have the other instructions provided to the jury. During instruction arguments, after Mr. Locati excepted to the failure to give his proposed instruction, the trial court remarked it was giving an instruction allowing Mr. Locati to make the "same argument" and giving Mr. Locati some "wiggle room." RP at 189-90. Mr. Locati's trial counsel conceded: "It gives me a little bit." RP at 190. Given this record, Mr. Locati cannot prevail.
Mr. Locati cites a number of federal cases applying or recognizing estoppel defenses in criminal prosecutions. See, e.g., Cox v. State of Louisana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); United States v. Tallmadge, 829 F.2d 767 (9th Cir.1987); United States v. Lansing, 424 F.2d 225, 227 (9th Cir.1970). Division Two of this court recently reversed an unlawful firearm possession conviction on due process grounds because the predicate sentencing court failed to inform the defendant of the firearm prohibition and the defendant reasonably relied on the sentencing court's error of law. See State v. Leavitt, 107 Wash.App. 361, 372-73, 27 P.3d 622 (2001). Our facts are dissimilar; our record consists of speculative and contradicting evidence, and thus is unclear, unlike that in Leavitt.
In any event, "ignorance of the law is no defense[.]" Leavitt, 107 Wash.App. at 368, 27 P.3d 622; see also Reed, 84 Wash. App. at 384, 928 P.2d 469; State v. Patterson, 37 Wash.App. 275, 282, 679 P.2d 416 (1984). But "[w]e may assume arguendo with appellant that there exists a narrowly limited class of cases where misleading governmental activity constitutes a good defense to a criminal charge." Lansing, 424 F.2d at 226 (italics in original). Such a defense may rest on a diversity of theories, such as entrapment, or "on more general principles of due process and estoppel." Lansing, 424 F.2d at 227 (citations omitted). In the due process context, "[t]he exception at issue addresses the legal consequences of a violation of the criminal law by an individual who takes measures to learn what conduct the government has proscribed, but is misadvised by the government *1292 itself." Leavitt, 107 Wash.App. at 369, 27 P.3d 622.
To persuade a trial court to allow a defense based on misleading governmental conduct, "more is required than a simple showing that the defendant was as a subjective matter misled, and that the crime resulted from his mistaken belief." Lansing, 424 F.2d at 227. At a minimum, a criminal defendant relying on an estoppel or misleading conduct defense must show his or her reliance on misleading information provided by the government was objectively reasonable under the particular circumstances of the case. See Barker, 546 F.2d at 947-48; see also Leavitt, 107 Wash.App. at 372-73, 27 P.3d 622 (noting defendant's reasonable reliance on predicate sentencing court's error). As the Lansing court reasoned:
When a defendant claims, as does appellant here, that his criminal conduct was the result of reliance on misleading information furnished by the government, society's interest in the uniform enforcement of law requires at the very least that he be able to show that his reliance on the misleading information was reasonablein the sense that a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.
Lansing, 424 F.2d at 227.
Factors to consider in the reasonableness determination include the authority of the source providing the misleading information and whether the defendant received inconsistent information from the same or a different source. See, e.g., Leavitt, 107 Wash.App. at 371-73, 27 P.3d 622 (sentencing court failing to inform defendant of firearm prohibition); Cox, 379 U.S. at 570-71, 85 S.Ct. 476 (police chief, in presence of sheriff and mayor, misleading defendant as to permitted area of demonstration); Tallmadge, 829 F.2d at 774 (defendant's reliance on misinformation from federally licensed gun dealer reasonable in light of defendant's attorney's mistaken opinion as to legality of gun possession); Barker, 546 F.2d at 949-50 (White House operative acting under apparent presidential authority); Lansing, 424 F.2d at 226-27 (correspondence and forms from draft board).
Although Mr. Locati alleged reasonable reliance on his CCO having approved his acquisition of firearms, such reliance became untenable when the two police officers warned Mr. Locati in no uncertain terms that he was mistaken, that he could not possess firearms, and, therefore, had to "get rid of" his guns. RP at 125. In other words, the warnings, at a minimum, placed him on notice to make further inquiries. See Lansing, 424 F.2d at 227. The trial court, could have, as a matter of law decided Mr. Locati's claim of reasonable reliance was unfounded. Nevertheless, the trial court gave a knowledge instruction, which permitted Mr. Locati to argue his theory of the case.
Moreover, Mr. Locati does not argue he was hampered in arguing his theory of the case, merely that he should have had a specific instruction on equitable estoppel. As pointed out, under these facts, equitable estoppel is not available. A defendant is not entitled to an instruction unsupported by evidence. State v. Ager, 128 Wash.2d 85, 93, 904 P.2d 715 (1995). The trial court will not allow an instruction on a particular theory if there is no evidence from which a jury could reasonably infer existence of that theory. See id. at 96, 904 P.2d 715. When evidence of any element of a defense is lacking, the trial court will not give the requested instruction. Id. at 95, 904 P.2d 715.
Reasonable reliance is an element of the estoppel defense. Barker, 546 F.2d at 940; Lansing, 424 F.2d at 225. Assuming without deciding an estoppel instruction was theoretically available, and viewing the particular circumstances of this case, there was no factual basis from which a juror could reasonably infer Mr. Locati's reasonable reliance at the relevant time. Ager, 128 Wash.2d at 96, 904 P.2d 715. Accordingly, Mr. Locati was not entitled to such an instruction.
Additionally, and for the first time on appeal, Mr. Locati likens this situation to *1293 entrapment. Assuming without deciding due process concerns permit review for the first time on appeal under RAP 2.5(a)(3), Mr. Locati's theory must necessarily fail because he approached his CCO with the idea of acquiring guns. See United States v. Smith, 802 F.2d 1119, 1124-25 (9th Cir.1986) (noting entrapment defense is unavailable when defendant is predisposed to commit the crime). Moreover, this concept is undermined by Mr. Locati's concession that he initially heeded the more recent warnings from police officers before reacquiring the five firearms.
Affirmed.
WE CONCUR: SWEENEY, J. and KURTZ, J.