IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71963-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MICHAEL HARRIS EHAT, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 28, 2014 |

SCHINDLER, J. — The jury convicted Michael Harris Ehat on two counts of

unlawful possession of a firearm. Ehat claims his attorney provided ineffective

assistance of counsel by failing to file a motion to suppress the firearms. Ehat also

contends the undisputed evidence at trial supported his reliance on the advice of a

police officer that he was entitled to possess the firearms. Because Ehat cannot

establish ineffective assistance, and because the record does not support the argument

that the undisputed evidence supported his defense, we affirm.

FACTS

Michael Harris Ehat lives in a two-bedroom trailer in Roy, Washington. Ehat's

brother Frank Robbins lived in a separate trailer on the same property.

In 2007, Ehat pleaded guilty to assault in the fourth degree, domestic violence. As a condition of the judgment and sentence, Ehat was prohibited from possessing firearms. The "Notice of Ineligibility to Possess a Firearm" states, in pertinent part:

> **YOU ARE ADVISED THAT YOU MAY NOT POSSESS A FIREARM UNTIL YOUR RIGHT HAS BEEN RESTORED BY A COURT OF RECORD. VIOLATION IS A FELONY UNDER RCW 9.41.040.**[1]

In July 2012, Ehat's friend Richard Young moved into the trailer with Ehat. On August 6, Ehat discovered his brother Robbins had committed suicide and called 911. Pierce County Sheriff's Department Detective Gary Sanders responded to the 911 call. Ehat told Detective Sanders that his brother had personal property and firearms inside the trailer. Detective Sanders told Ehat to secure the trailer "so that none of that stuff would be taken." Ehat did not tell Detective Sanders that he was prohibited from possessing firearms. Ehat took his brother's guns to his trailer.

On October 21, 2012, Young called 911 to report that Ehat had pointed a shotgun at him. Deputies Franklin Brown and Anthony Filing responded to the 911 call. Young was standing in a neighbor's driveway about 100 feet away from Ehat's trailer. Detective Daren Witt arrived a few minutes later. The officers spoke to Young for about 10 to 15 minutes.

Deputy Filing was concerned about officer safety and called Ehat on his cell phone to ask him to come outside. Ehat agreed to come outside. The officers handcuffed Ehat and advised him of his Miranda[2] rights. Ehat then told the officers that "there were some firearms in the house," and invited the officers inside.

---

[1] Emphasis in original.

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Ehat showed the officers a .22 caliber rifle on the floor of one of the bedrooms. Ehat told officers that "the shotgun should have been in the room, but it was missing."

Young told officers the shotgun was behind the sofa in the living room. Deputy Brown retrieved the shotgun from behind the sofa and secured both firearms in the patrol car.

The State charged Ehat with assault in the second degree with a deadly weapon in violation of RCW 9A.36.021(1)(c) and two counts of unlawful possession of a firearm in violation of RCW 9.41.040(2)(a)(1).

The defense theory at trial on the assault charge was general denial. As to the two counts of unlawful possession of a firearm, the defense theory was entrapment by estoppel. The defense argued Ehat relied in good faith on Detective Sanders' instruction to secure the weapons from his deceased brother's trailer.

The State called Young and several officers, including Deputy Brown and Detective Sanders, to testify at trial. The court admitted certified copies of the "Statement of Defendant on Plea of Guilty" for the 2007 assault conviction and the Notice of Ineligibility to Possess a Firearm. The court also admitted into evidence a copy of the 911 call, and the rifle and shotgun found in Ehat's trailer.

Young testified that on October 21, Ehat came "out of the bedroom with a shotgun, puts it in my face, pumps out a round on the floor and says he can pick me out the country boy way, matter of fact he can blow my brains out." Young testified he grabbed the shotgun barrel and pushed it away, and then left the trailer to call 911. Young testified that Ehat "kept a pump shotgun behind the couch and some other .22s in the back bedroom."

3

Detective Witt testified that after Deputy Brown read Ehat his Miranda rights, "Mr. Ehat invited us inside his home. We went inside. He showed us where some firearms were."

Deputy Brown testified that Ehat told him that "he knew he shouldn't be possessing [the shotgun] because he couldn't, but then he also explained that he was told by Deputy Sanders to secure the weapons." Deputy Brown also testified that Ehat was calm, cooperative, and not upset during his contact with him.

Detective Sanders testified that when he talked to Ehat after his brother's suicide, "[t]here was a mention of personal property and possibly guns in the residence, and I just told him to make sure to secure the residence so that none of that stuff would be taken." Detective Sanders testified he assumed Ehat would "[l]ock the front door and the back door." Detective Sanders testified that he did not instruct Ehat to take the firearms home and that Ehat never said anything about his ineligibility to possess firearms. Detective Sanders testified that he does not tell anyone to take firearms into their possession "without doing a criminal history" check.

The court gave the defense proposed instruction on entrapment by estoppel. Jury instruction 20 states:

> It is a defense to the charge of Unlawful Possession of a Firearm Second Degree, as charged in Counts II and III, if you find that the defendant believed he was acting out of a good faith reliance on the apparent authority of another to authorize his actions as long as his reliance was objectively reasonable.
> The defendant has the burden of proving this defense by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded, considering all of the evidence in the case, that it is more probably true than not true. If you find from the evidence that the defendant has established this defense, it will be your duty to return a verdict of not guilty as to these charges.

4

The jury found Ehat not guilty of assault in the second degree and convicted Ehat on the two counts of unlawful possession of a firearm. The trial court imposed a standard-range six-month sentence. Ehat appeals.

ANALYSIS

Ineffective Assistance

Ehat argues his counsel provided ineffective assistance by failing to file a motion to suppress the rifle and shotgun found in his trailer.

A criminal defendant has a constitutional right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In order to prevail on a claim of ineffective assistance of counsel, Ehat must demonstrate (1) deficient performance, that his attorney's representation fell below the standard of reasonableness; and (2) resulting prejudice, that but for the deficient performance, the result would have been different. Strickland, 466 U.S. at 687; State v. Bowerman, 115 Wn.2d 794, 808, 802 P.2d 116 (1990) (adopting the standards in Strickland). If a defendant fails to establish either prong, we need not inquire further. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

To prevail on his claim that his attorney's performance was deficient because the attorney did not file a motion to suppress the firearms found in his home, Ehat must show the court would have granted the motion to suppress. Hendrickson, 129 Wn.2d at 79-80; see also State v. Brown, 159 Wn. App. 366, 371, 245 P.3d 776 (2011) (defense counsel has no duty to pursue arguments that appear unlikely to succeed).

Ehat argues the warrantless search of his home violated his rights under article 1, section 7 of our state constitution because the officers did not tell Ehat he could

5

refuse to consent to the search as required by State v. Ferrier, 136 Wn.2d 103, 118-19, 960 P.2d 927 (1998). The State contends Ferrier did not apply in these circumstances. We agree with the State.

In Ferrier, the court held that under article 1 section 7, an officer employing a "knock and talk" procedure must inform the person whose consent is sought of the right to refuse entry. Ferrier, 136 Wn.2d at 115. A "knock and talk" occurs when a police officer, in order to avoid obtaining a warrant, goes to a residence, knocks on the door, and asks to enter and search the home for contraband. Ferrier, 136 Wn.2d at 115.[3]

In Ferrier, four armed officers wearing "black 'raid jackets' " asked Ferrier's permission to enter her home. Ferrier, 136 Wn.2d at 107. The officers had uncorroborated information that Ferrier was conducting a marijuana grow operation in her home, and conducted the "knock and talk" in order to avoid obtaining a warrant. Ferrier, 136 Wn.2d at 106-07. Once Ferrier invited the officers inside, the officers told Ferrier that they learned of a marijuana grow operation in her house. Ferrier, 136 Wn.2d at 108. Officers asked for consent to search the home and had Ferrier sign a consent form, but did not explain that Ferrier could refuse to allow the officers to search the home. Ferrier, 136 Wn.2d at 108. The Supreme Court held that under article 1, section 7, an officer conducting a "knock and talk" procedure to obtain consent to search a home must "inform the person from whom consent is sought that he or she may lawfully refuse to consent to the search." Ferrier, 136 Wn.2d at 114-15, 118.

---

[3] In Ferrier, the court quoted a police officer's testimony defining a "knock and talk" as:
You go to the door, knock on the door, make contact with the resident, ask if you can come in to talk about whatever the complaint happens to be . . . .
    Once you're inside, you talk about why you're there and ask for permission to search the premises.
Ferrier, 136 Wn.2d at 107 (internal quotation marks omitted).

In State v. Williams, 142 Wn.2d 17, 11 P.3d 714 (2000), the Supreme Court held that it is not "prudent or necessary to extend Ferrier to require that police advise citizens of their right to refuse entry every time a police officer enters their home." Williams, 142 Wn.2d at 27. In State v. Khounvichai, 149 Wn.2d 557, 69 P.3d 862 (2003), the court concluded, "[T]here is a fundamental difference between requesting consent to search a home and requesting consent to enter a home for other legitimate investigatory purposes." Khounvichai, 149 Wn.2d at 564. And in State v. Leupp, 96 Wn. App. 324, 980 P.2d 765 (1999), the court held that an officer responding to a 911 distress call had no duty to inform the defendant Leupp of his right to refuse consent to enter the home:

> [The officer] did not go to Leupp's residence to conduct a knock and talk. That inherently coercive situation occurs when police officers come to someone's door without a warrant or other basis for entry, suspecting illegal activity but lacking probable cause to arrest or search, and ask if they can come inside to look around. . . . Instead, [the officer] came to Leupp's door responding to a 911 distress call. . . . In this situation, [the officer] had no duty to inform Leupp of a right to refuse consent.

Leupp, 96 Wn. App. at 333-34.[4]

Likewise, here, the police did not employ a coercive "knock and talk" procedure. The police responded to Young's 911 call and entered the trailer with the consent of both residents to secure firearms allegedly involved in a domestic violence assault. Because a motion to suppress on the grounds asserted by Ehat would not have been successful, he does not establish ineffective assistance of counsel.

Sufficiency of the Evidence

In the alternative, Ehat argues insufficient evidence supports the unlawful possession of a firearm convictions because the undisputed evidence established his affirmative defense of entrapment by estoppel.

---

[4] Internal quotation marks omitted.

The State must prove each essential element of the crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Oster, 147 Wn.2d 141, 146, 52 P.3d 26 (2002). In deciding whether sufficient evidence supports a conviction, we must view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A challenge to the sufficiency of the evidence admits the truth of the State's evidence. Salinas, 119 Wn.2d at 201. "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Salinas, 119 Wn.2d at 201. We defer to the trier of fact on "issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

While ignorance of the law is no defense, " 'there exists a narrowly limited class of cases where misleading governmental activity constitutes a good defense to a criminal charge.' " State v. Locati, 111 Wn. App. 222, 227, 43 P.3d 1288 (2002) (quoting United States v. Lansing, 424 F.2d 225, 226 (9th Cir. 1970)). "Such a defense may rest on a diversity of theories, such as entrapment, or 'on more general principles of due process and estoppel.' " Locati, 111 Wn. App. at 227 (quoting Lansing, 424 F.2d at 227). Entrapment by estoppel is an affirmative defense that "may be raised only where a government official or agent has actively assured the defendant that certain conduct is reasonable, and the defendant reasonably relies on that advice and

continues or initiates the conduct." State v. Krzeszowski, 106 Wn. App. 638, 646, 24 P.3d 485 (2001) (citing United States v. Trevino-Martinez, 86 F.3d 65, 69 (5th Cir. 1996)).

Ehat claims the undisputed evidence supports his affirmative defense of entrapment by estoppel. The record does not support his argument. Detective Sanders did not tell Ehat to take custody of the firearms or take the firearms to his trailer. Detective Sanders testified that he told Ehat to lock the front and back door of his brother's trailer to protect the firearms and other personal property. Detective Sanders testified that in cases involving deaths, "property becomes disputed, so we never tell anybody to take the property out because you have other family members that possibly have vested interest in the property." Detective Sanders testified he would not have given Ehat permission to take a firearm without verifying whether Ehat had a conviction that prohibited him from possessing firearms.

We affirm.

WE CONCUR: