# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50075-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| TAMMY RUSH, | |
| Appellant. | |

BJORGEN, J. — A jury returned verdicts finding Tammy Rush guilty of two counts of unlawful possession of a controlled substance with intent to deliver, one count of unlawful possession of a controlled substance, and one count of bail jumping. Rush appeals from her conviction of unlawful possession of a controlled substance and from one of her two convictions of unlawful possession of a controlled substance with intent to deliver, asserting that the trial court's exclusion of certain testimony from her husband, Keith Rush,[1] violated her due process right to raise the defense of entrapment by estoppel. In her statement of additional grounds for review (SAG), Rush contends that (1) the trial court violated her due process and confrontation

---

[1] We refer to Keith Rush by his first name for clarity. We intend no disrespect.

rights by prohibiting Keith from testifying at trial, and (2) the State failed to present sufficient evidence in support of her convictions of unlawful possession of a controlled substance and unlawful possession of a controlled substance with intent to deliver. We affirm.

FACTS

On January 30, 2015, Clark County Sheriff's officers went to the Rushes' residence in Vancouver to execute a search warrant. Officers saw the Rushes in a vehicle near the residence and conducted a stop of the vehicle. Officers found a barrel key in Rush's purse, which officers used to unlock a storage container in the Rushes' garage. Inside the container, officers found cocaine, a digital scale, and packaging material. Officers also found a box in the rafters of the Rushes' garage that contained 995.9 grams of methamphetamine. Officers seized the evidence described above but did not arrest either of the Rushes on that date.

On March 30, 2016, officers again executed a search warrant at the Rushes' residence. Officers stopped Rush while she was driving a vehicle near the residence. After being advised of her *Miranda*[2] rights, Rush agreed to speak with Detective Kenny Lutz. Rush told Lutz that she had approximately one pound of methamphetamine in a backpack in her vehicle. Rush consented to a search of her vehicle, and officers found methamphetamine and cash in the backpack. Rush also told Lutz that she purchases a kilogram of methamphetamine from her suppliers every other day for $9,000 and that multiple people owed her debts for methamphetamine that she had supplied to them. During a search of the Rushes' residence, officers found a digital scale, mail addressed to Rush, approximately $13,000 contained inside a paper towel dispenser, and a money counter.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

On April 1, 2016, the State charged Rush with unlawful possession of a controlled substance with intent to deliver (methamphetamine) and unlawful possession of a controlled substance (cocaine) based on the January 30, 2015 search of her person and residence. The State also charged Rush with a second count of unlawful possession of a controlled substance with intent to deliver (methamphetamine) based on the March 30, 2016 search of her vehicle and residence. On September 6, the State filed an amended information adding one count of bail jumping.

At an October 11 motion hearing, Rush testified during an offer of proof that she had told Keith that it was "weird" that they were not arrested after the January 30, 2015 search of their residence. Report of Proceedings (RP) at 542-43. Rush stated that Keith had told her that they were not arrested because he was working with police in Oregon.

At trial, witnesses testified consistently with the facts as stated above. After the State rested its case in chief, the defense stated its intent to call Keith to testify and presented an offer of proof as to Keith's expected testimony. In the offer of proof, Keith described his cooperation agreement with Multnomah County to reduce his sentence for drug-related charges in Oregon in exchange for his assistance to Oregon law enforcement officers in setting up suspected drug traffickers. Keith stated that the cooperation agreement did not mention Rush or activities occurring in Clark County, Washington. Keith stated that Clark County Sheriff's Detective Chris Luque decided not to arrest him and Rush after learning about the cooperation agreement. Keith further stated that his Oregon contact person, Officer J.D. McGuire, told him that he spoke with Luque and that he and Rush would not be charged for the January 2015 incident.

Following the offer of proof, the trial court ruled that Keith could not testify regarding his

cooperation agreement with Multnomah County, reasoning:

> [T]he unrebutted testimony is that [Rush] didn't act with th[e] understanding [that
> her actions were immunized]. She didn't act at all. Her testimony is—or at least
> Mr. Rush's testimony is she didn't know what was going on. She didn't know the
> stuff was there. She didn't know that he was acting as an informant until months
> later. She didn't know that this guy was coming over to put the stuff in there in
> exchange for taking money out. She didn't know any of that.
>
> So even if this agreement exists and even if it was legal, it couldn't possibly
> have anything to do with her actions because she wasn't aware of it.
>
> What she actually has, if she has any defense at all, is a defense based on, I
> guess, unwitting possession or the fact that she found an accomplice. That she
> might be in proximity to illegal activity and know the person who's committing it,
> but, in fact, that she wasn't an accomplice, as that term is used in the law.
>
> So if she wants to present Mr. Rush's testimony on that point, she's
> permitted to do so. If you want to call him to testify that he did all this stuff himself,
> she didn't know what was going on, she didn't have anything to do with it, that
> testimony's admissible.
>
> But he is not permitted to testify that he was legally justified in doing it,
> because there isn't any basis for that, and he can't testify that someone subsequently
> immunized her conduct, because he's not permitted to testify to that either. The
> evidence would have to come from people who have the authority to immunize her,
> not from him.
>
> . . . .
>
> If he wants to testify on January 30th when they drove off, there wasn't any
> methamphetamine in the house, that he'd arranged for some guy to bring it in
> afterwards and put it in a lockbox and take some money and that she didn't know
> any of that was going on, if that's his testimony, then he can testify to it.

RP at 359-61. After the trial court ruled on the admissibility of certain portions of Keith's

proposed testimony, Keith exercised his Fifth Amendment right not to testify at Rush's trial.

The jury returned verdicts finding Rush guilty of two counts of unlawful possession of a

controlled substance with intent to deliver, unlawful possession of a controlled substance, and

bail jumping. The jury also returned special verdicts finding that she committed the two counts

of unlawful possession of a controlled substance with intent to deliver within 1,000 feet of a

4

school bus stop. Rush appeals.

## ANALYSIS

### I. RIGHT TO PRESENT A DEFENSE

Rush contends that the trial court violated her right to present the defense of entrapment by estoppel by prohibiting Keith from testifying about his cooperation agreement with Oregon police.[3] Because Keith's proposed testimony was not relevant to establish the defense of entrapment by estoppel, we disagree.

When reviewing whether a trial court's ruling excluding evidence violated a defendant's right to present a defense, we first review the trial court's relevancy determination for an abuse of discretion. *State v. Horn*, 3 Wn. App. 2d 302, 310-11, 415 P.3d 1225 (2018); *see State v. Blair*, 3 Wn. App. 2d 343, 350, 415 P.3d 1232 (2018). A criminal defendant does not have a due process right to present irrelevant evidence. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). "If the court excluded relevant defense evidence, we [then] determine as a matter of law whether the exclusion violated the constitutional right to present a defense." *State v. Clark*, 187 Wn.2d 641, 648-49, 389 P.3d 462 (2017).

Although ignorance of the law is not a valid defense to a criminal charge, "'there exists a narrowly limited class of cases where misleading governmental activity constitutes a good defense to a criminal charge.'" *State v. Locati*, 111 Wn. App. 222, 227, 43 P.3d 1288 (2002) (quoting *United States v. Lansing*, 424 F.2d 225, 227 (9th Cir. 1970)). "Such a defense may rest on a diversity of theories, such as entrapment, or 'on more general principles of due process and

---

[3] Rush raises this issue only with regard to her convictions of unlawful possession of a controlled substance and unlawful possession of a controlled substance with intent to deliver stemming from the January 30, 2015 incident. She does not appeal her bail jumping conviction or unlawful possession of a controlled substance with intent to deliver conviction stemming from the March 30, 2016 incident.

estoppel.'" *Locati*, 111 Wn. App. at 227 (quoting *Lansing*, 424 F.2d at 227). Entrapment by estoppel is an affirmative defense that "may only be raised where a governmental official or agent has actively assured the defendant that certain conduct is reasonable, and the defendant reasonably relies on that advice and continues or initiates the conduct." *State v. Krzeszowski*, 106 Wn. App. 638, 646, 24 P.3d 485 (2001) (citing *United States v. Trevino-Martinez*, 86 F.3d 65, 69 (5th Cir. 1996)).

Keith stated during an offer of proof that his cooperation agreement did not mention Rush or explicitly authorize any criminal activities in Washington State. Rush stated during an offer of proof that she was unaware of the cooperation agreement between Keith and Oregon law enforcement officials prior to January 30, 2015. Because Rush was not aware of the cooperation agreement prior to engaging in criminal conduct on January 30, 2015, and because Keith's testimony during the offer of proof did not otherwise tend to show that Rush engaged in such criminal conduct in reliance on any assurance from a governmental official, the trial court did not abuse its discretion in determining that Keith's proffered testimony was not relevant to the defense of entrapment by estoppel.

Despite the uncontroverted testimony that Rush was not aware of Keith's cooperation agreement and that she was not a party to the cooperation agreement, Rush argues that Detective Luque's decision not to arrest her on January 30, 2015 ratified Officer J.D. McGuire's assurances to Keith that Rush would not be prosecuted for her conduct on that date. Even assuming that Keith's statements regarding McGuire's assurance would be admissible at trial, it cannot support a defense of entrapment by estoppel because such purported assurance took place after Rush had already engaged in the criminal activity. Thus, Rush could not have acted upon

such assurance when committing her January 30, 2015 offenses. Accordingly, we affirm the trial court's ruling excluding Keith's proffered testimony about his cooperation agreement.

## II. SAG

### A. Right to Present a Defense/Confrontation Right

In her SAG, Rush first contends that the trial court violated her due process right to present a defense and her confrontation right by prohibiting Keith from testifying that she was unaware that he had arranged for someone to come to their home and leave the large quantity of methamphetamine later found by police on January 30, 2015. This argument fails because the trial court did not exclude this testimony. Rather, the trial court excluded only testimony regarding Keith's cooperation agreement with Oregon law enforcement officials. In so ruling, the trial court explicitly stated that Keith would be permitted to testify about Rush's lack of knowledge regarding the methamphetamine found at their home. Keith, however, elected to exercise his Fifth Amendment right to not testify at Rush's trial. Accordingly, Rush's contention on this issue lacks merit.

### B. Sufficiency of the Evidence

Finally, Rush contends that the State failed to present sufficient evidence in support of her unlawful possession of a controlled substance conviction and the first of her two convictions of unlawful possession of a controlled substance with intent to deliver. We disagree.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's

evidence and all reasonable inferences that can be drawn from it." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014), *on remand*, 191 Wn. App. 759 (2015), *as corrected* February 11, 2016. We defer to the jury on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d 840 (2014).

To convict Rush of unlawful possession of a controlled substance, the State had to prove beyond a reasonable doubt that she (1) possessed (2) a controlled substance. Former RCW 69.50.4013 (2015). To convict Rush of unlawful possession of a controlled substance with intent to deliver, the State had to prove beyond a reasonable doubt that she (1) possessed (2) a controlled substance (3) with intent to deliver the controlled substance. RCW 69.50.401.

Possession of a controlled substance may be actual or constructive. *State v. Ibarra-Cisneros*, 172 Wn.2d 880, 897, 263 P.3d 591 (2011). Actual possession occurs when a defendant has physical custody of the item, and constructive possession occurs if the defendant has dominion and control over the item. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). Dominion and control can be over "either the drugs or the premises on which the drugs were found." *State v. Callahan*, 77 Wn.2d 27, 30-31, 459 P.2d 400 (1969). Mere possession of a controlled substance is insufficient to prove an intent to deliver. *State v. Reichert*, 158 Wn. App. 374, 391, 242 P.3d 44 (2010). Rather, the State must prove possession and at least one additional factor that indicates the defendant's intent to deliver, which may include substantial amounts of cash, scales, cell phones, address books, baggies, or materials used to manufacture narcotics. *State v. Goodman*, 150 Wn.2d 774, 783, 83 P.3d 410 (2004).

Rush does not challenge the evidence in support of the jury finding that the substances

found in the garage were controlled substances, instead appearing to challenge only the evidence in support of the jury finding that she possessed the cocaine and methamphetamine on January 30, 2015 with intent to deliver. Specifically, Rush argues that the State's evidence was insufficient to support her convictions because Keith admitted in an offer of proof that she had no knowledge of the drugs found in their home. This argument, however, misapprehends the test for determining whether sufficient evidence supports a conviction. First, Keith's testimony at the offer of proof was not presented to the jury and bears no relation to the evidence supporting Rush's conviction. Second, even if Keith's testimony were presented to the jury, it would concern only the persuasiveness of evidence and issues of witness credibility, which we do not evaluate on review.

Detective Lutz testified that Rush admitted to living in both the residence and the garage associated with the residence where officers found methamphetamine and cocaine. Additionally, during the January 30, 2015 stop of her vehicle, officers found a barrel key in Rush's purse that opened a locked cabinet in the garage that contained the cocaine. This evidence, when viewed in a light most favorable to the State, was sufficient to prove that Rush had dominion and control over the premises where the cocaine and methamphetamine were found on January 30, 2015. Accordingly, the State presented sufficient evidence that Rush constructively possessed cocaine and methamphetamine on January 30, 2015.

The evidence was also sufficient to prove that Rush possessed the methamphetamine with intent to deliver. In addition to the large quantity of methamphetamine found by officers, officers found several items in the garage on January 30, 2015 associated with drug delivery, including a digital scale and packaging material. Moreover, Detective Lutz testified that

following Rush's arrest in 2016, Rush told him that she purchases a kilogram of methamphetamine from her suppliers every other day for $9,000 and that multiple people owed her debts for methamphetamine that she had supplied to them. In light of the evidence described above, Rush's challenge to the sufficiency of evidence supporting her convictions lacks merit. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, J.

We concur:

Lee, A.C.J.

Melnick, J.